**RECORD NO. 14-1771**

*In The*

# United States Court of Appeals

## For The Fourth Circuit

**In re: VINCENT ABELL,**

*Debtor.*

----------------------------------------------------------------------------------------------

**VINCENT L. ABELL,**

*Debtor – Appellant,*

**v.**

**MARIA THERESA WILSON,**

*Appellee,*

**ROGER SCHLOSSBERG, Chapter 11,**

*Trustee – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT GREENBELT

_____

## BRIEF OF APPELLANT

_____

Philip J. McNutt
HUGHES & BENTZEN, PLLC
1100 Connecticut Avenue, N.W., Suite 340
Washington, DC  20036
(202) 293-8975

*Counsel for Debtor – Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _14-1771_    Caption: _ABELL v. Wilson, et al_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Vincent L. Abell_____
(name of party/amicus)

_____

who is _____the Appellant herein_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?   ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:

Roger Schlossberg, Trustee          There is no creditors' committee
P.O. Box 4227
134 West Washington Street
Hagerstown, MD 21741-4227

Signature: __/s/ Philip J. McNutt_____   Date: ____August 4, 2014____

Counsel for: __Apellant_____

## CERTIFICATE OF SERVICE
**************************

I certify that on ____August 4, 2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__/s/ Philip J. McNutt_____          ____August 4, 2014____
(signature)                                    (date)

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    STATEMENT OF THE BASIS OF APPELLATE JURISDICTION  . . . . . 1

    A.    The Basis of Appellate Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    Course of Proceedings and Disposition Below  . . . . . . . . . . . . . . . 5

    C.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

V.    ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    A.    The Sanction of Final Determination of Non-exempt Status,
         Without a Hearing on the Merits is the Same Sanction as a
         Default Judgment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    B.    The Bankruptcy Court's Failure to Allow Abell to Prepare for
         and Appear at the Hearings on the Retirement Plan Exemptions
         Constitutes a Denial of Due Process  . . . . . . . . . . . . . . . . . . . . . . . 30

    C.    The Court's Disposition Without the Meaningful Participation
         of the Debtor Is a Violation of the Debtor's Procedural and
         Substantive Rights to Due Process . . . . . . . . . . . . . . . . . . . . . . . . 31

D.    The Bankruptcy Court Abused Its Discretion When it Awarded the Ultimate Sanction of a Default Judgment on the Debtor's Claims of Exemption for his Pension Funds and Roth IRA . . . . . . 34

E.    The Bankruptcy Court Failed to Follow Well Recognized Factors in Determining the Sanction, if any, to be Invoked . . . . . . . 35

F.    The Debtor Was Entitled to Adequate Warning that a Sanction of Disallowance of his Exemptions Would Result from a Failure to Adequately Respond to the Court's Order of December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

G.    The Sanction of Default Judgment is A Severe Sanction With a More Narrow Range of Discretion in the Trial Court . . . . . . . . . . . 40

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

TABLE OF AUTHORITIES

Page(s)

CASES

*Abreu v. City of New York*,
    208 F.R.D. 526 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Anderson v. Foundation for Advancement,*
*Education and Employment of American Indians*,
    155 F.3d 500 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Armstrong v. Manzo*,
    380 U.S. 545 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Baldwin v. Hale*,
    68 U.S. 223 (1863) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Choice Hotels International, Inc. v. Goodwin & Boone*,
    11 F.3d 469 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39, 43

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Commercial Cleaning Servs., L.L.C. v. Colin Service Systems, Inc.*,
    271 F.3d 374 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Daval Steel Products v. M/V Fakredine*,
    951 F.2d 1357 (2d. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*Diaz v. Southern Drilling Corp*,
    427 F.2d 1118, *cert. denied sub nom*,
    *Trefina v. United States*,
    400 U.S. 878 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
    952 F.2d 802 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dorsey v. Academy Moving & Storage, Inc.*,
    423 F.2d 858 (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-35

*Fox v. Studebaker-Worthington, Inc.*,
    516 F.2d 989 (8th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Gill v. Stolow*,
    240 F.2d 669 (2d Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Grannis v. Ordean*,
    234 U.S. 385 (1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Hobson v. Travelstead (In re Travelstead)*,
    227 B.R. 638 (D.Md. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Hochberg v. Howlett*,
    92 Civ. 1822, 1994 U.S. Dist. LEXIS 5617,
    1994 WL 184337 (S.D.N.Y. April 28, 1994) . . . . . . . . . . . . . . . . . . . . . . 46

*Hovey v. Elliott*,
    167 U.S. 409 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 39, 43

*Indep. Investor Protective League v. Touche Ross & Co.*,
    607 F.2d 530 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 43

*In re Bryson Properties, XVIII*,
    961 F.2d 496 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Charfoos*,
    979 F.2d 390 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Comer*,
    723 F.2d 737 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Compton Corp.*,
　　90 B.R. 798 (N.D. Texas 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re James Wilson Assocs.*,
　　965 F.2d 160 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Professional Hockey Antitrust Litigation*,
　　63 F.R.D. 641 (E.D. Pa. 1974), *rev'd*,
　　531 F.2d 1188, *rev'd*,
　　427 U.S. 639 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Lane Hollow Coal Company v.*
*Director, Office of Workers' Compensation Programs*,
　　137 F.3d 799 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Lincoln Savings Bank, FSB v. Suffolk County Treasurer*
*(In re Parr Meadows Racing Ass'n)*,
　　880 F.2d 1540 (2d Cir. 1989), 19 BCD 1125, *cert. denied*,
　　493 U.S. 1058 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Link v. Wabash Railroad Co.*,
　　370 U.S. 626 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Linnear v. White*,
　　422 F.2d 864 (7th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*McCargo v. Hedrick*,
　　545 F.2d 393 (4th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Mullane v. Central Hanover Bank & Trust Co.*,
　　339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950) . . . . . . . . . . . . . . . . . . 33

*Nasser v. Isthmian Lines*,
　　331 F.2d 124 (2d Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*National Hockey League v. Met. Hockey Club*,
　　427 U.S. 639 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 46

***Nieves v. City of New York***,
    208 F.R.D. 531 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 46

***Reizakis v. Loy***,
    490 F.2d 1132 (4th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

***Robison v. Transamerica Insurance Co.***,
    368 F.2d 37 (10th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

***Scott's Co. v. United Industries Corp.***,
    315 F.3d 264 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

***Securities & Exchange Commission v. Research Automation Corp.***,
    521 F.2d 585 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

***Societe Internationale v. Rogers***,
    357 U.S. 197 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39, 43

***Southern States Rack & Fixture, Inc. v. Sherwin-Williams***,
    318 F.3d 592 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

***Tazco v. Director, OWCP***,
    895 F.2d 949 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

***Thomas E. Hoar, Inc. v. Sara Lee Corp.***,
    882 F.2d 682 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

***Trans World Airlines, Inc. v. Hughes***,
    332 F.2d 602, (2d Cir. 1964), ***rev'd on other grounds***,
    409 U.S. 363 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 34

***United States v. Minor***,
    228 F.3d 352 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

***United States v. United States Gypsum Co.***,
    333 U.S. 364 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wilson v. Volkswagen of Am., Inc.*,
   561 F.2d 494 (4th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Windsor v. McVeigh*,
   93 U.S. 274 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-32

CONSTITUTIONAL PROVISION

U.S. CONST. amend V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

STATUTES

11 U.S.C. § 158(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 362(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

11 U.S.C. § 522(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. § 522(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. § 726 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11 U.S.C. § 1109(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Md. Code Ann., Cts. & Jud. Proc. § 11-504(h) . . . . . . . . . . . . . . . . . . . . . 4

RULES

Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 39, 42

Fed. R. Civ. P. 37(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

Fed. R. Civ. P. 41(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38, 39

Fed. R. Bankr. P. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Bankr. P. 4003(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Bankr. P. 7037 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Fed. R. Bankr. P. 8001(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Bankr. P. 8013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Bankr. P. 9014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

OTHER AUTHORITIES

8 Wright & Miller, *Federal Practice & Procedure*, § 2284 . . . . . . . . . . . . . . . . . 37

8 Wright & Miller, *Federal Practice & Procedure*, § 2289 . . . . . . . . . . . . . . . . . 42

*Standards for Imposition of Discovery Sanctions*,
7 *Me. L. Rev* 247 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 42

I.    STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

A.    <u>The Basis of Appellate Jurisdiction.</u>

Appellate Jurisdiction in the United States District Court is based upon 11 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001(a).

The Decision appealed from is Judge Chasanow's Order of July 3, 2014 affirming the Orders of the Bankruptcy Court (Mannes, J.) Ordering sanctions against the Appellant.  The July 3, 2014 Order is a final order disposing of the District Court appeal.

The Appellant timely noted his appeal of the District Court Order on July 31, 2014.

Appellate jurisdiction in the United States Court of Appeals for the Fourth Circuit is based upon 28 U.S.C. § 1291.

B.    <u>Standard of Review.</u>

A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed de novo. ***See*** Fed. R. Bankr. P. 8013; ***In re Bryson Properties, XVIII***, 961 F.2d 496, 499 (4th Cir. 1992); ***See also In re Comer***, 723 F.2d 737,739 (9th Cir. 1984) and ***In re Charfoos***, 979 F.2d 390 (6th Cir. 1992) (The district court applies a clearly erroneous test to findings of fact on review of the bankruptcy court, but plenary review of questions of law).

Despite the existence of evidence to support the lower court's findings, the appellate court may, nevertheless, reverse those findings if, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed. *U.S. v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Scott's Co. v. United Industries Corp.*, 315 F.3d 264, 278 (4th Cir. 2002) quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 815 (4th Cir. 1991).

The standard of review for the issuance of sanctions by the District Court is Abuse of Discretion. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 505-06 (4th Cir. 1977). When the sanction imposed is default judgment, "the Trial Court's "range of discretion is more narrow" than when the Court is imposing other less severe sanctions. *Id.*, 561 F.2d at 503, citing *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 993 (8th Cir. 1975).

II.     STATEMENT OF ISSUES PRESENTED

1.     Whether the Bankruptcy Court abused its discretion in granting sanctions against the Debtor that were inconsistent with those requested by the Trustee and those stated on the record.

2.     Whether the Bankruptcy Court abused its discretion by not considering lesser sanctions.

3.     Whether the Bankruptcy Court violated the Debtor's constitutional right to due process when it granted sanctions disallowing the Appellant's claims of exemptions to his Pension Plan Benefits and his Roth IRA.

4.     Whether the Bankruptcy Court violated the Debtor's constitutional due process rights by not allowing the Debtor's attendance or participation in the hearings held on November 21, 2013 and/or February 12, 2014.

5.     Whether the Bankruptcy Court abused its discretion by ordering relief inconsistent with the relief requested by the Trustee at the February 12, 2014 hearing.

6.     Whether the Bankruptcy Court abused its discretion by not providing sufficient warning that failure to comply with the Court's December 13, 2013 Order would result in the draconian action disallowing the Appellant's property rights in his pension benefits and Roth IRA without a hearing on the merits.

7.     Whether the Bankruptcy Court abused its discretion by showing improper bias against the Debtor.

8.     Whether the District Court applied the correct standard in reviewing the Bankruptcy Court's discretion regarding the sanctions imposed.

9.     Whether the Bankruptcy Court erred by failing to take into account the discovery produced to the United States Trustee, the Chapter 11 Trustee and Wilson in the Superior Court case.

10.    Whether the District Court improperly failed to consider lesser sanctions.

11.    Whether the Bankruptcy Court and the District Court erred in applying the accepted factors to determine whether the ultimate sanction of disallowance of exemptions was appropriate.

III.    STATEMENT OF THE CASE

A.    <u>Nature of the Case.</u>

This case is an appeal from an Order of the United States District Court (Chasanow, J.) (Apx. 000457) affirming two orders of the United States Bankruptcy Court for the District of Maryland (Mannes, J.) entered on February 18, 2014 and February 24, 2014, respectively (Apx. 000433, 000436).  The Bankruptcy Court Orders each  relate to the Appellant's claim of exempt status of his retirement funds (Modern Management Profit Sharing Plan and Trust and Roth IRA) pursuant to 11 U.S.C. § 522(b)(2) and Maryland Annotated Code, Courts & Judicial Proceedings Article, § 11-504(h).

The matter on appeal was commenced in the Abell Chapter 11 Bankruptcy Case, Case No. 13-13847, by the filing of an objection to the Debtor's claim of exemptions.  Apx. 000007.  The objection creates a contested matter pursuant to Fed. R. Bankr. P. 4003(a) and 9014.

4

B.    Course of Proceedings and Disposition Below.

On May 22, 2013 Creditor Maria-Theresa Wilson ("Wilson") filed objections to three categories of property claimed by the Appellant, the Debtor below, Vincent L. Abell ("Abell" or "Appellant" or "Debtor"), as exempt, namely, property owned by the Debtor with his wife, Marta Bertola, as tenants by the entireties under Maryland law, the Debtor's interest in the Modern Management Employee Pension Plan and Trust and the Debtor's interest in his Roth IRA. Apx. 000007.

The Court held a hearing on the objections on June 27, 2013 and issued an Order on July 3, 2013 overruling the objections related to the Debtor's tenancy by the entireties property. (D-139).

On September 19, 2013 the Court approved the appointment of Roger Schlossberg, Esquire, as Trustee of the Debtor's Chapter 11 estate. (D-260).

On October 23, 2013, the Court signed an Order granting the Trustee permission to intervene in the contested matter (objections to exemptions) scheduled for hearing on November 7, 2013. (D-89).

On October 23, 2013, the Bankruptcy Court continued the hearing on the Objection to the Debtor's exemptions as to the Debtor's retirement funds, to May, 2014.

5

On November 21, 2013 the Court held a hearing on Wilson's Motion to Compel Discovery. *See* Transcript of Hearing on November 21, 2013, Apx. 000112.

The Court entered an order on the Motion to Compel on December 11, 2013. Apx. 000142.

On January 21, 2014 the Trustee filed a Motion to Compel and for Sanctions.

On January 21, 2014 Wilson filed her Motion for Sanctions.

On February 18, 2014, the bankruptcy court (Mannes, J.) entered an order granting the Trustee's Motion for Sanctions. Apx. 000437.

On February 24, 2014, the bankruptcy court entered an order granting Wilson's Motion for Sanctions. Apx. 000440.

The Order of February 18th ordered that the facts related to the non-exempt status of the Debtor's Roth IRA and his pension benefits in the Modern Management Pension Plan and Trust are established in favor of the Trustee and Wilson and the IRA and Pension Trust are not established in compliance with applicable law and do not constitute funds entitled to exemption. Apx. 000437.

The Order of February 24th denied and dismissed Abell's exemption claims to the Pension Trust and Roth IRA and sustained the Wilson Objections as to the Pension and IRA exemption claims. Apx. 000440.

6

The Debtor filed a timely appeal of the Orders entered on February 18th and February 24th to the United States District Court for the District of Maryland. District Court Docket ("DCD") No. 1.

On July 3, 2014, the United States District Court (Chasanow, J.) issued a Memorandum Opinion and Order affirming the Bankruptcy Court Orders. Apx. 000452.  An Order granting a judgment of affirmance was entered on July 3, 2014. Apx. 000461

The Notice of Appeal was timely filed in the United States District Court on July 31, 2014.  Apx. 000462.

C.     Statement of Facts.

On March 5, 2013, the Appellant, the Debtor, Vincent L. Abell filed a voluntary petition in the United States Bankruptcy Court for the District of Maryland (D-1)[1].  The Appellant remained Debtor-in-possession until September 19, 2013 when Roger Schlossberg's appointment as Chapter 11 Trustee was approved by the bankruptcy court (D-260).

The Debtor filed his Schedules in the Bankruptcy Court on March 27, 2013 (D-26).

---

[1] References to the docket entries in the Bankruptcy Court below, including those matters from the record transmitted for this appeal will refer to "D" for docket and the number of the entry, *e.g.* D-1 (Debtor's Bankruptcy Petition)

On March 20, 2013, Creditor Maria Theresa Wilson ("Wilson") filed a Motion seeking to modify the automatic stay of 11 U.S.C. § 362(a) (D-20) in order to allow her to proceed with discovery pending in the Superior Court case, Civil No. 2004 CA 7270 ("The Superior Court Case").

On April 26, 2013 the Bankruptcy Court (Mannes, J.) Issued an Order granting Wilson's Motion (D-67). The effect of the April 26, 2013 Order was to require Abell to produce significant amounts of information and documentation to Wilson, a creditor whose claims were subject to the control of the bankruptcy proceeding and the priority established by, *inter alia*, 11 U.S.C. § 726. Nevertheless, by giving Wilson the ability to require Abell to produce significant amounts of discovery, the bankruptcy court created a dual responsibility, namely, a responsibility to produce documents and information to the United States Trustee, the administrator of Abell's Chapter 11 Case while also requiring Abell, through the April 26th, Order, to provide the same information and documentation to Wilson, a creditor, whose collections efforts were stayed by the bankruptcy filing and whose claims are completely subsumed by the claims of the bankruptcy estate and, later the Chapter 11 trustee.

On May 22, 2013, Creditor Maria-Theresa Wilson filed timely objections ("the Wilson Objections") to the Appellant's claimed exemptions to his Tenancy

by the Entireties Interests, his interest in the Modern Management Company Employee Benefit Trust and his interest in his Roth IRA. Apx. 000007

On May 28, 2013, Creditors Hedwig, Mark and Karen Cissel ("the Cissels"), Andria and Maria Taylor ("the Taylors"), and Amy and David Parsons ("the Parsons:) (collectively the Cissels, the Taylors and the Parsons are referred to as "the Cissel Creditors") also filed timely objections (D-102).  In their objections, the Cissel Creditors merely adopted, without change, the Wilson Objections (collectively, the Wilson Objections and the objections filed by the Cissel Creditors are referred to herein as "the Wilson Objections").

On June 27, 2013 the bankruptcy court held a hearing on the Wilson Objections and the Appellant's Opposition.  Apx. 000011.

On July 3, 2013 the bankruptcy court (Mannes, J.) issued its Order on the objections (D-139).  In his Order, Judge Mannes overruled the Wilson Objections as to the Tenancy by the Entireties exemptions.

On July 5, 2013 the bankruptcy court then issued a scheduling order which scheduled an evidentiary hearing on the objections to exemptions for November 7, 2013 (D-147).

On September 8, 2013 the Appellant filed a Motion for Summary Judgment on the issue of whether the Debtor's property, claimed owned as Tenants by the

Entireties, was actually held as Tenancy by the Entireties under Maryland law and, therefore, exempt under 11 U.S.C. § 522(l) (D-243).

On October 16, 2013 the Trustee filed a motion to intervene in the exemptions contested matter (D-283). The Court granted the Trustee's Motion pursuant to an Order entered on October 23, 2013 (D-289). At the same time, the Court issued a new scheduling order, at the request of the Trustee, continuing the trial scheduled for November 7, 2013 to May 20, 2014. ***See***, Amended Scheduling Order dated October 23, 2013. Apx. 000097.

After receiving the Court's new scheduling order, the Appellant filed a motion to reconsider (Apx. 000100) which was denied by the Court on November 26, 2013 (D-308).

At the Trustee's request, the Court delayed the hearing on the Wilson Objections from November 7, 2013 to May 20, 2014,[2] 6 months. Apx. 000092, 000096. The Appellant has sought no delays or continuances of the trial on his claim of exemptions.

Abell had numerous responsibilities from November 18, 2013 through April, 2014 that were directly related to his attempts to obtain his release from

---

[2] Because all matters related to the objections to the Debtor's exemptions have been resolved, pending the outcome of this Appeal, the hearing scheduled for May 20, 2014 been removed from the docket and all matters related to the contested matter commenced upon the filing of the Wilson Objections have been stayed.

incarceration in The Superior Court case of **Wilson v. Abell**, Case No. 2004 CA 7270. Despite the Chapter 11 filing, and despite the obvious advantages of continuing discovery in the bankruptcy Court, through the expansive discovery authorized under Fed. R. Bankr. P. 2004 and otherwise, the Bankruptcy Court (Mannes, J.) lifted the automatic stay of 11 U.S. C. § 362(a) and allowed the discovery proceedings to continue in the Superior Court under the threat of incarceration. After Abell's incarceration in November, 2013, he was cut off from all access to documents and information, relying almost exclusively on his estranged wife, Marta Bertola, and his counsel.

Bertola's cooperation was sparing in November and December, 2013, but picked up dramatically in January, 2014 when Wilson filed a motion to hold Bertola in contempt of the Superior Court for another alleged discovery violation. While Bertola did little to directly help Abell, she provided thousands of pages of documents, testified about discovery in a deposition conducted by Counsel for Wilson, and attended several court hearings during the period January through April, 2013, all under threat of incarceration.

In fact, during the period of November 18, 2013 through early January, 2014, Bertola stated repeatedly that assisting Mr. Abell in his production was not "my duty" and "not my responsibility." Ms. Bertola did provide sporadic

11

responses to specific questions and did provide a few limited documents but did not provide much assistance, at all until early January.

Moreover, Wilson recognized this problem by raising, in early January, 2014, his outstanding discovery addressed to Ms. Bertola and her management company, Phoenix Real Estate 2, LLC ("PRE 2"), and that started a much more complete focus on discovery from Bertola through at least April, 2014. But only related to her subpoena and documents which were collateral to that discovery production (e.g. all financial reports rather than just those which were part of her subpoenaed documents.)

From January to the end of April, 2014, Bertola's declared focus was to obtain her release from the Show Cause filed by Wilson against her.

Of course, one of the problems for Abell was that his discovery in the exemptions contested matter was due in January, 2014. Abell was in jail with no access to his files or information and Bertola was bogged down in her own discovery dispute while being threatened with sanctions including the potential of incarceration. No one expected that Abell would remain in jail for more than a few weeks, let alone months.

Despite numerous attempts to obtain proof of discovery related to the exemptions from Bertola and despite previously providing significant and relevant discovery regarding his exemptions, Abell was then threatened with more

sanctions while he is locked up in jail with limited and only sporadic access to the outside world. In some cases days went by without any contact by Abell with his family or his counsel due to jail staffing, lock downs, and other jail protocols.

Abell had argued, in response to Wilson's Motion seeking to continue proceedings in the Superior Court after Abell's bankruptcy filing, that all discovery matters in other courts should be stayed and that all information and discovery regarding the Debtor's assets and liabilities, and all matters related to the administration of the bankruptcy estate should be brought before the bankruptcy court under well established guidelines for bringing all actions related to the Debtor, his assets, liabilities and the administration of his estate, into the Bankruptcy Court. *See*, Debtor's Amended Response and Opposition to Wilson's Motion for Relief from the Automatic Stay (D-43). *See also*, *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n*, 880 F.2d 1540 (2d Cir. 1989), 19 BCD 1125, *cert. denied.*, 493 U.S. 1058 (1990) (The Automatic stay is a crucial provision of bankruptcy law which is designed to prevent disparate actions against debtors and protect creditors in manner consistent with bankruptcy goal of equal treatment of creditors by ensuring that no creditor receives more than its equitable share of the debtor's estate.); and *In re Compton Corp.*, 90 B.R. 798 (N.D. Texas 1988). (The policy underlying 11 U.S.C. § 362 as a whole is to afford immediate relief to debtor from

understandably importunate creditors, and also to prevent dissipation of debtor's remaining assets before orderly, equitable distribution to creditors may be effected.). Judge Mannes, however, allowed the continuation of the Wilson discovery in the Superior Court despite the obvious interference and duplication with the bankruptcy estate's collection and liquidation of assets and the administration of Abell's Chapter 11 estate. *See* Order, April 26, 2013 (D-67).

In September, 2013 Judge Epstein held a hearing in the Superior Court on the issue of discovery still required of Abell pursuant to a previous order of the Superior Court (Long, J.). At the September hearing, a status conference was scheduled for November 18, 2013. It was clear from the outcome and rulings at the September hearing that Abell was subject to incarceration if he did not substantially comply with the discovery requirements set forth by Judge Epstein, pursuant to a previous order entered by Judge Long. It was clear, in part, because Judge Long's order of March 1, 2013 made it clear. Order of March 1, 2013, at p. 34. Apx. 000216

From approximately March 1, 2013 through November 17, 2013, Abell was under significant discovery burdens, in the form of document requests, depositions, meetings (with the U.S. Trustee, the Trustee and his counsel), responses to interrogatories and other demands for information and documentation requiring research into transactions and related documents and information

14

extending back to at least January, 2005. These requests came from the United States Trustee, the Trustee (Mr. Schlossberg), Wilson, and others.

As a result of these demands and the imminent threat of incarceration after the September, 2013 Superior Court Hearing, from at least September, 2013, Abell was under extreme pressure to attempt to obtain and produce documents and discovery responses prior to November 18, 2013. (*See* docket entries, Case No. 2004 CA 7270, Pages 5-6 of 36) ("09/13/2013 ... Event Resulted: ... If Defendant Abell does not comply by 10/4/2013 with Judge Long's March 1, 2013 order of compulsion, the Plaintiff may file a motion to lift the stay of the sanction of incarceration and for execution of the contempt sanction." and "10/25/2013 ... Result: Status Hearing Held ... Show Cause why Defendant Vincent Abel (sic) should not be held in Contempt for not complying with Judge Long's Order set for 11/18/2013..."). Apx. 000448-449.

After the entry of Judge Long's Order in Case No. 2004 CA 007270 on March 1, 2013, Abell filed three additional responses to Wilson's expansive and detailed Interrogatory Requests. The Third Supplemental Response was served on Wilson's counsel on or about October 3, 2013. The Fourth Supplement Response was served on Wilson's counsel on November 17, 2013. At the hearing on November 18, 2013, Judge Epstein determined that because Abell's discovery responses were not substantially complete as of October 4, 2013, Mr. Abell was

subject to a severe sanction and incarcerated Abell immediately at the hearing on November 18, 2013. *See* Docket Entries, Case No. 2004 CA 7270, Docket Date 11/18/2013 "Event Resulted ... Defendant incarcerated from courtroom today ..." Apx. 000449.

Since November 18, 2013, much of the efforts of Abell and his Counsel have been directed toward obtaining Abell's release from incarceration. Unfortunately, Abell was not released from jail until May 1, 2014 and he is still confined to a halfway house until at least October 30, 2014 when his status will be revisited.

During the period of August through September, 2013, Abell provided, through Bertola, over 900 pages of documents related directly to the retirement fund exemptions and the discovery requested in this Case. In total, Abell produced, through the efforts of Bertola and PRE 2, a total of over 3900 pages of documents directly related to the retirement fund exemptions including bank accounts, formation documents, tax filings and returns, evidence of notes and other obligations and other documents. Most of those documents were produced prior to October, 2013 and some were produced as early as May, 2013. Others, including some duplicates, were produced in early February, 2013.

In addition to the documents produced Abell also prepared and timely served complete responses to Wilson's Interrogatories in September, 2013. *See*

16

Debtor's Opposition, Exhibit E (Debtor's Responses to Wilson Interrogatories).

Apx. 000380.

Upon the appointment of the Chapter 11 Trustee, Abell's income became an asset of the Chapter 11 estate controlled by the Trustee. Abell had no income, no resources, no employees or staff and no other ability to acquire, or produce discovery without the assistance of Bertola.

While the Appellees assert that PRE 2 is the alter ego or instrumentality of Abell, that assertion is disputed by PRE 2, Bertola, its owner, and Abell. No credible evidence has been offered to support the alter ego theory and no evidence has been put forward which links Abell in any way to the ownership or operations of PRE 2. Until, or unless, a Court of competent jurisdiction enters judgment on the issue of the claim of alter ego, PRE 2 is an independent entity over which Abell has no authority or control.

On or about May 5, 2013 Abell provided to the United States Trustee ("UST") and the UST shared with Wilson's counsel, specific documents related to the retirement funds claimed exempt, including bank statements, checks, notes, tax filings, plan documents, correspondence and other related documents.

In addition to other significant numbers of related documents delivered to the UST and Wilson, Abell met with the Trustee in early October, 2013 and

17

requested documents from Bertola and PRE 2 at the time of the meeting. Some of those documents also related to the retirement funds claimed exempt.

During his incarceration Abell consistently argued that he was severely hampered, if not prevented, from obtaining his own release due to the fact that the information and documents necessary to bring his discovery responses into substantial compliance were in the sole custody and control of his estranged wife, Marta Bertola and such information and documents were all located at Bertola's business offices at PRE 2, 6328 Eastern Avenue, NW, Washington, DC. Abell consistently asserted that he did not have meaningful access to the necessary information and documentation necessary to complete his discovery responses. He also consistently asserted that only Marta Bertola ("Bertola") owner and manager of PRE 2, the management company for Abell related entities and properties, could provide the information and documents, all of which were in the possession of PRE 2 and Bertola and under their sole custody and control. ***See*** Debtor's Opposition to the Motions for Sanctions (D-382), at *passim*.

Nevertheless, Abell did produce evidence of prior good faith attempts to comply with discovery. See, for example, Letter of Marta Bertola to Randall C. Ogg, February 10, 2014, Apx. 000340, which asserts that much of the discovery requested in relation to the exemptions matters was previously produced. In fact, nearly 4,000 pages of documents were produced prior to February, 2014 either

18

directly to counsel for Wilson or to the United States Trustee and the Trustee. These irrefutable facts were conveniently forgotten by the Appellees. More importantly they were ignored by the Bankruptcy Court.

In Abell's Supplemental Response, Bertola prepared a list of 9 different productions of documents related to the exemptions at issue. Including the additional production of February 10, 2014 the total production of documents was more than 3900 pages, just in those deliveries. *See* Exhibits to Opposition, Apx. 000340-360 and Debtor's Supplemental Responses, Apx. 000361-379.

Abell's original answers to Wilson's Interrogatories are attached as an exhibit to the Opposition, Apx. 000380-386.

Three attempts to obtain Abell's release, in November and December, 2013 and early January, 2014, failed. Included in those attempts was the filing of complete responses to Wilson's incredibly broad, 62 categories of documents in her pending Request for Production of Documents, going back to January, 2005, and two additional supplemental responses to the Wilson Requests for Production of Documents. Also included were two additional, supplemental responses to Wilson's Interrogatories, the Fifth and Sixth Supplemental Response(s).

As a result of Abell's assertions that control of the responses sought by Wilson lay with Ms. Bertola, Wilson filed a new Motion, on January 3, 2013 (*See* docket entries, Case No. 2004 CA 7270m 01/03/2014) seeking sanctions,

19

including incarceration, against Ms. Bertola related to a subpoena issued to her and to her company which Bertola had not, according to Wilson, complied with. According to Wilson, Bertola's subpoena required the production of most of the documents requested from Abell, for the period of 2010 through 2014.

As a result of Wilson's Motion seeking sanctions against Ms. Bertola, she turned almost all of her attention to satisfying her discovery requirements to avoid her own sanctions, including incarceration. ***See***, *inter alia*, Transcript, Bankruptcy Court Hearing, February 12, 2014 ("Feb. 12 Tr."), at pp. 22, 23-25, 23, 1-25, 24, 1-4. Apx. 000420-422.

After more than 5 months of incarceration, the Superior Court finally conceded that Abell could not adequately assist in providing the discovery mandated in the Superior Court Case while in jail. By its Order on or about May 1, 2014, the Superior Court released Abell to a halfway house from which was permitted PRE 2 and his counsel's office for the purpose of reviewing documents and providing additional discovery. After his release from jail on May 1, 2014, Abell has produced additional written responses to Wilson's discovery requests as well as delivered tens of thousands of pages of emails, bank records, financial reports and other discovery which Wilson asserted was not previously provided.

At least three hearings were held concerning Ms. Bertola's compliance with her discovery requirements. Those hearings took place in February, March and

April, 2014. The first hearing was on or about February 6, 2014. (*See* Wilson v. Abell docket entries, Page 3 of 36) Ms. Bertola was finally released from her subpoena obligations, but not until April 28, 2014.

On July 10, 2013, Wilson served discovery on Abell related to the exemptions contested matter. On August 13, 2013, Abell served his responses. On September 10, 2013, Wilson's counsel, Randall C. Ogg, Esquire ("Ogg") outlined claimed deficiencies in Abell's discovery responses to Abell's counsel.

From June, 2013 through mid-September, 2013, Abell's counsel, Philip McNutt, was in his office only sporadically due to his father's terminal illness and numerous trips to Rochester, New York to help care for his father and elderly mother. Counsel's father died on September 16, 2013 and his funeral took place on Friday, September 20, 2013.

Prior to leaving for his father's funeral, Abell's counsel briefly discussed Wilson's deficiency claims and counsel agreed to discuss further after Abell's counsel returned from his father's funeral. That discussion, however, did not take place.

On October 8, 2013, Wilson filed a Motion to Compel against Abell (D-281) asserting deficiencies in responses to Wilson's discovery requests.

A hearing was held on Wilson's Motion on November 21, 2013, two days after Abell's incarceration. Not only was Abell not available for the hearing on

21

the 21st, or for preparation for the hearing, his location was not even available until November 22, 2013 due to jail procedures and protocols.

At the hearing on the 21st, Abell's counsel advised the bankruptcy court that Mr. Abell was unavailable, he was incarcerated, and that he was necessary for his counsel's presentation and defense of the Wilson Motion.  *See* Feb. 12 Tr., pp. 3-4.  Apx. 000401-402 .

On December 13, 2013, the bankruptcy court issued its order on the Motion to Compel (D-323). The Order required, *inter alia*, that specified documents be produced within 28 days of the Order.  The Order also required Abell to produce a statement in the event the documents were not fully produced.  The Order contained no other mandates and did not specify any result or remedy in the event that Abell did not comply with the Order. Apx. 000142. The Court knew, or should have known, that it would be impossible to comply without the cooperation and assistance of Bertola.  The Order contained no notice or indication that failure to timely comply would result in any sanction, certainly not a sanction tantamount to a default judgment.

Although Abell requested, from Bertola (the records at Phoenix's office), on more than one occasion, directly and through his counsel, the information and documents necessary to comply with the bankruptcy court's Order (D-323), the documents were not produced. Abell's Counsel also sought to review potentially

22

responsive documents at Phoenix's offices, during the period of December, 2013

through January, 2, 2014, with almost no success. *See*, Feb. 12 Tr. pp. 11-24.

Apx. 000409-422.

In the Debtor's Opposition filed on February 11, 2014, Bertola did provide

complete responses to the Wilson Request for Production. *See* Debtor's

Opposition, Apx. 000328, Exhibit D, Debtor's Supplemental Response to Creditor

Maria-Theresa Wilson's First Request for Production of Documents, Apx. 000341.

That Supplemental Response specifies the date and location, by description and

bates number, of responsive documents previously delivered to Wilson.

Also attached as an Exhibit to the Debtor's Opposition is the Statement of

Vincent L. Abell, signed by him on February 11, 2014 (Abell Statement).  Apx.

000387.

Also attached as an Exhibit to the Debtor's Opposition is the Debtor's

Responses to the Trustee's Interrogatories. Apx. 000380.

The Debtor also filed a Supplemental Response (Apx. 000431) intended to

provide further information related to the items contained in the Court's Order of

December 13, 2013.

In the Debtor's Supplemental Opposition, the Debtor emphasizes that Ms.

Bertola is the only person who is able to review paper and electronic records to

provide the information requested in the subject discovery.  *See* Supplemental

Opposition (D-384), at ¶ 1.  While in jail, Mr. Abell's ability to even assist Ms.

Bertola, or his counsel, was extremely limited.  ***See***, *inter alia*, Abell Statement

(D-382-6), at pp. 1-2.

On February 5, 2014, the Court scheduled a hearing on the Debtor's Motion

for Summary Judgment on the issue of the tenancy by the entireties exemptions.

The Trustee did not appear at the scheduled hearing time, apparently due to

confusion as to the correct hearing date.  Abell's counsel agreed to continue the

hearing rather than to inconvenience the Trustee.  ***See*** Transcript, Bankruptcy

Court hearing, February 5, 2014 ("Feb. 5 Tr."), *passim*.

At the hearing on the Motions for Sanctions filed by Wilson and the

Trustee, the Trustee did not actively seek sanctions, but only a continuation of the

discovery deadlines. Counsel for the Trustee sought "a reasonable extension of the

discovery of 60-90 days" Transcript, Bankruptcy Court hearing on February 12,

2014 (Feb. 12 Tr."), at pp. 5, 14-25, 6, 1-15.

The Trustee's counsel responded to the Court's inquiry, as follows:

"THE COURT" So you want an extension date?  Anything else?

MS. MCUSKER [Trustee's Counsel]: "If your Honor is not willing to
consider our Motion for Sanctions, we'll take the extension."

Feb. 12 Tr., at pp. 6, 16-20. Apx. 000405.  No other relief was requested, and

Trustee's Counsel made no effort to push the court to impose sanctions, apparently

recognizing that the requested extension of discovery was appropriate, under the circumstances of the case.

Later in the hearing, after listening to argument from Counsel for Wilson, the Debtor and the Trustee, the Court stated:

> "THE COURT: For one thing, I'm going to extend discovery until May 1st."

Feb. 12 Tr., at pp. 27, 14-15.

> "THE COURT: I'm going to continue this hearing for three weeks as to the sanctions to let the parties see if anything happens as a result of the eleventh hour filing."

Feb. 12 Tr., at pp. 28, 11-14. Apx. 000426.

After stating the Court's ruling, Judge Mannes then gave the option back to Mr. Ogg:

> "Is that of any assistance to you or should I simply take this under advisement, Mr. Ogg?"

Apx. 000426.

The Debtor contends that the Court intended to rule as quoted above but then turned the option over to Mr. Ogg, counsel for Wilson who had already obtained and sustained Mr. Abell's incarceration and threatened the incarceration of Ms. Bertola.  Given the fact that the issue at play was whether exempt property would become property of the estate for the benefit of all creditors the Appellant asserts that the Court should have, at the very least, focused on, and given

25

deference to, the Trustee's position, namely that a lesser sanction was acceptable. The assets at issue were under the sole control and authority of the Trustee if they come back into the estate.

Mr. Abell was unable to participate or prepare for the hearing on November 21, 2013 Nov. 21 Tr., at pp. 3, 16-21, 4, 2-17. Apx. 000114 - 000115. Mr. Abell was unable to meaningfully participate in the hearing on February 12, 2014, or in the discovery process leading up to that hearing, due to his incarceration and the inability or unwillingness of Ms. Bertola to assist.

## IV.    SUMMARY OF ARGUMENT

The Appellant contends that the action taken by Judge Mannes in issuing his Orders of February 18, 2014 and February 24, 2014 not only violates the Appellant's due process rights to procedural and substantive due process, but also violates well established precedent regarding the issuance of sanctions for discovery violations.

The Bankruptcy Court ignored this Circuit's clear requirement of effective notice to the Appellant of the possibility of such a severe sanction as default. Moreover, the Court failed to review the factors established in this Circuit for severe sanctions such as default and, further, failed to focus on the lack of bad faith, as well as the other three factors of prejudice, deterrence and available lesser sanctions.

In this case, discovery sanctions were sought by the Trustee as part of the Trustee's first Motion to Compel.  The Trustee's Motion for Sanctions was the first discovery motion filed by the Trustee against the Debtor.  The Trustee is the real party in interest and he represents the interests of all creditors and parties in interest.  Wilson, on the other hand, is limited to her own interests and claims, all of which are stayed due to the bankruptcy filing.  Because the trustee is the one party that represents all interests he is the party prejudiced by the alleged "bad faith" conduct of Abell.

The Appellant asserts that there was not, and could not have been, a finding of bad faith on the part of the Appellant and that there was no prejudice to the moving parties.  Furthermore, other remedies were available and acceptable to the Trustee.

The inability of the Appellant to participate in the sanctions hearings and, particularly, his inability to assist in the preparation for the hearing on November 21, 2013 is particularly troubling to the notice and due process requirements established by the Constitution and consistently recognized in this Circuit.

V.    ARGUMENT

   A.    <u>The Sanction of Final Determination of Non-exempt Status, Without
         a Hearing on the Merits is the Same Sanction as a Default Judgment.</u>

      Standard of Review: *de novo*

   There is no difference between the bankruptcy court orders determining that

the Debtor's retirement funds exemptions are not exempt (as a discovery sanction)

and a judgment by default.

   The sanction of judgment by default for failure to comply with discovery

orders is the most severe sanction which the court may apply, and its use must be

tempered by the careful exercise of judicial discretion to assure that its imposition

is merited.  However, where one party has acted in willful and deliberate disregard

of reasonable and necessary court orders and the efficient administration of justice,

the application of even so stringent a sanction is fully justified and should not be

disturbed.  *See Nasser v. Isthmian Lines*, 331 F.2d 124 (2d Cir. 1964); *Link v.

Wabash Railroad Co.*, 370 U.S. 626 (1962); *Gill v. Stolow*, 240 F.2d 669 (2d Cir.

1957).  *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 614, (2d Cir. 1964),

*rev'd on other grounds*, 409 U.S. 363 (1973).  So, the question is whether the

conduct of the Appellant below was in such "willful and deliberate disregard" of

"**necessary** court orders."  In *Trans World Airlines*, the defendant's principal,

Howard Hughes,  deliberately chose not to appear for his deposition and so

notified the court after several, failed, procedural attempts to postpone and avoid the deposition. *Id.*, at p. 612-13.  The court found that his deposition was absolutely essential to the proper conduct of the litigation. *Id.*, at p. 614-15.

Here, the Appellant was not even able to attend the hearing on the Wilson Motion for contempt.  The Appellant was in jail trying to satisfy other discovery requirements in another case involving the same party (Wilson)[3].  His only source of help to provide the Court Ordered discovery was his estranged wife, also under threat of incarceration in the Superior Court case during the period applicable to the Court's discovery order, and his attorney, who had no access to discovery without the assistance of Abell's estranged wife.  There is no evidence, and no finding, that the Appellant was in bad faith during the discovery process and, in fact, substantially all of the discovery sought was provided.  Although the court found that the discovery was delivered (by Bertola) late, there is substantial evidence indicating that the discovery sought by Wilson, the moving party, had already been provided through documents delivered both in the Abell bankruptcy case and in the Superior Court Case.

---

[3]Although the Trustee has intervened in the exemptions contested matter (D-289), the only objections timely filed were those filed by Wilson in May, 2013 (D-100). The Cissel Creditors, who have not participated in the contested matter after the June 27, 2013 (status) hearing merely adopted the Wilson Objections (D-102).  Therefore, even if the Cissel Creditors are still active participants the only objections pending are those asserted by Wilson.

No prejudice was ever shown to the moving parties. In fact, the Trustee's requested relief was to extend discovery so that the Trustee could conduct additional discovery based upon the lateness of the interrogatory responses. The Court ignored the Trustee's request and decided, instead, to punish the Appellant while he was unable to properly protect his rights.

    B.    <u>The Bankruptcy Court's Failure to Allow Abell to Prepare for and Appear at the Hearings on the Retirement Plan Exemptions Constitutes a Denial of Due Process.</u>

Standard of Review: *de novo*

Anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains. ***Hobson v. Travelstead (In re Travelstead)***, 227 B.R. 638, 650 (D.Md. 1998). The ***Hobson*** ruling thus makes explicit what is implicit in an in rem proceeding -- that everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims. ***In re James Wilson Assocs.***, 965 F.2d 160, 169 (7th Cir. 1992), cited in ***Hobson v. Travelstead (In re Travelstead)***, 227 B.R. 638, 650 (D.Md. 1998).

The Appellant asserts that by not allowing him to meaningfully participate in the hearings on his exemptions (November 21, 2013, February 5, 2014 and February 12, 2014) and then deciding the Appellant's right to his exempt Pension and IRA property interests, the right afforded to the Appellant was violated. ***See***

11 U.S.C. § 1109(b) (A party in interest, including the debtor ... may raise and may appear and be heard on any issue in a case under this Chapter.

Ordinarily, representation by counsel might be sufficient to satisfy the requirements of § 1109 and *Hobson*.  However, in the matter on appeal, the granting by the Bankruptcy Court of discovery sanctions, which resulted in the forfeiture of the Debtor's exempt property, required not just representation, but effective representation.  Counsel for the Debtor appeared at the hearing on November 21, 2013, the hearing used by the Court to file its Order to Compel, but Counsel did so without any contact with his Client to prepare for the hearing.  At the very least, the Court should have postponed the hearing to allow Abell to appear, or to assist Counsel.  The Court did neither.  Because the "right to be heard" issue raised first in the Bankruptcy Court and then reasserted to the District Court raises legal and constitutional issues, it is subject to *de novo* review.

C.    The Court's Disposition Without the Meaningful Participation of the Debtor Is a Violation of the Debtor's Procedural and Substantive Rights to Due Process.

Standard of Review: *de novo*

For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."  ***Baldwin* v. *Hale***, 1 Wall. 223, 233 (68 U.S. 223) (1863). **See *Windsor* v. *McVeigh***, 93 U.S. 274

(1876); ***Hovey v. Elliott***, 167 U.S. 409; ***Grannis v. Ordean***, 234 U.S. 385.  It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." ***Armstrong v. Manzo***, 380 U.S. 545, 551 (1965), quoted and cited in ***Fuentes v. Shevin***, 407 U.S. 67, 80 (1972).

Whether or not the Appellant's legal and constitutional rights to notice and due process were properly preserved in the Bankruptcy Court is an issue of law decided *de novo* by the Appellate Courts.

The Appellant likens the facts and circumstances of this case to analogous cases involving forfeiture of property or a property interest.  ***United States v. Minor***, 228 F.3d 352, 356 (4th Cir. 2000) (Notice of an impending forfeiture is a matter of obvious constitutional magnitude).

> Due process" is a versatile term designed for the daunting task of assuring justice to anyone from whom the state, or someone using the machinery of the state, wishes to take life, liberty, or property. We cannot imagine a better or more succinct choice of words than the one the Framers made. "Justice" and "fundamental fairness" are often urged to us as rough synonyms, but they actually describe just the end; "due process" is the means.

***Lane Hollow Coal Company v. Director, Office of Workers' Compensation Programs***, 137 F.3d, 799, 807 (4th Cir. 1998).

No "process," however thorough, can provide what is "due" without notice to those who stand to lose out thereby.  ***Tazco v. Director, OWCP***, 895 F.2d 949,

950 (4th Cir. 1990). "[The] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950). It is not always sufficient that the notice be received at some point before the deprivation; instead, the notice "must afford *a reasonable time* for those interested to make their appearance." *Id.* (emphasis added). A "reasonable time" is "a time when the deprivation can still be prevented." *Fuentes v. Shevin,* 407 U.S. 67, 81, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972).

In the instant case, Abell did not have direct or effective notice and, more importantly, he did not have the ability to protect his property interests due to the combination of incarceration, inability to consult with counsel, lack of access to documents and lack of resources to provide the discovery required or to provide evidence of prior production.

D.     The Bankruptcy Court Abused Its Discretion When it Awarded the Ultimate Sanction of a Default Judgment on the Debtor's Claims of Exemption for his Pension Funds and Roth IRA.

Standard of Review:     Abuse of Discretion as stated in ***Wilson v. Volkswagen of Am., Inc.***, 561 F.2d 494, 505-06 (4th Cir. 1977)

The power to impose sanctions is not "a discretion without bounds or limits but one to be exercised discreetly (***Trans World Airlines, Inc. v. Hughes***, 332 F.2d 602, 614 (2d Cir. 1964), ***rev'd on other grounds***, 409 U.S. 363, 34 L. Ed. 2d 577 (1973), cited in ***Wilson v. Volkswagon of America, Inc.***, *supra*, 561 F.2d at 505.  The power to grant default judgment in discovery proceedings "must be tempered by **the careful exercise of judicial discretion** to assure that its imposition is merited." ***Trans World***, *supra*, 332 F.2d at 614, cited in ***Wilson***, 561 F.2d at 505 (emphasis added).

This Circuit holds that the exercise of a sanction creating a default, such as here, must be exercised within a more narrow range of discretion.  ***See***, ***Wilson, supra***, 561 F.2d at 503  ***See also***, ***Securities & Exchange Commission v. Research Automation Corp.***, 521 F.2d 585, 588 (2d Cir. 1975), cited in ***Wilson, supra***, at 505.

"The rules of discovery "are designed to prevent prejudice due to inadequate trial preparation rather than simply to punish obduracy.  27 *Me. L. Rev.*, at 260, cited in ***Wilson***, 561 F.2d at 505.  ***See also***, ***Dorsey v. Academy Moving &***

***Storage, Inc.***, 423 F.2d 858, 860-1 (5th Cir. 1970) ("The rule is designed to empower the court to compel production of evidence by the imposition of **reasonable sanctions**. The court, however, should not go beyond the necessities of the situation to foreclose the merits of controversies as punishment for general misbehavior.") (emphasis added).

In ***Robison v. Transamerica Insurance Co.***, 368 F.2d 37, 39 (10th Cir. 1966), the Tenth Circuit stated that "... The office of 37(d) is to secure compliance with the discovery rules, not to punish erring parties." ***In accord***, ***Linnear v. White***, 422 F.2d 864, 865 (7th Cir. 1970).

    E.    <u>The Bankruptcy Court Failed to Follow Well Recognized Factors in Determining the Sanction, if any, to be Invoked.</u>

    Standard of Review:    Abuse of Discretion as stated in ***Wilson v. Volkswagen of Am., Inc.***, 561 F.2d 494, 505-06 (4th Cir. 1977), as to the granting of sanctions; *de novo* as to conclusions of law

In exercising the District Court's appellate function to determine whether the bankruptcy court has abused its discretion in disallowing the Debtor's exemptions claims without a hearing, missing, or refusing to lift a default, this Court must be guided by the manner in which the trial court balanced the following  factors established in this Circuit: (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that non-compliance caused the other parties; (3) the need for deterrence for this sort of non-compliance; and

(4) whether less drastic sanctions would have been effective. ***Southern States Rack & Fixture, Inc. v. Sherwin-Williams***, 318 F.3d 592, 597 (4th Cir. 2003) (quoting ***Anderson v. Foundation for Advancement, Education and Employment of American Indians***, 155 F.3d 500, 504 (4th Cir. 1998). The is an objective abuse of discretion consideration that has a broader standard of review because of the sanction actually granted.

There was no evidence of bad faith by Abell and there was no prejudice to the Trustee (or Wilson). Abell had not only produced substantial discovery in the exemptions contested matter. He had also produced over 1,000 pages of responsive documents prior to September, 2013. A list of the production solely related to the exemption subject to the contested matter is attached hereto as Exhibit A to this Brief. Moreover, the record is clear that Abell's ability to produce discovery after incarceration was extremely limited. Finally, the unwillingness of Bertola to provide the necessary discovery for the contested matter while her show cause matter was pending in the Superior Court was not only well known to the Moving parties, it was known to the Bankruptcy Court. Deterrence is not a factor in this case because Abell was already in jail for a discovery related matter.

The widely recognized treatise on Federal Practice, Wright & Miller, commented on the use of Rule 37 cautioning that the Rule does not give Courts

36

the unfettered right to award draconian sanctions for milder discovery failures, preserving the most severe penalties for flagrant cases.

> This merely emphasizes the fact that Rules 37(b) and 37(d) calls (sic) upon the court to "make such orders in regard to the failure as are just" and that justice requires that the most drastic sanctions be reserved for flagrant cases.

> Accordingly the courts have administered justice with mercy.  They have allowed a party a second opportunity to comply with the discovery rules and orders made under them...

> Yet it seems especially fitting that courts should make the punishment fit the crime and should not impose a drastic sanction that will prevent adjudication of a case on its merits except on the clearest showing that this course is required.

8 Wright & Miller, *Federal Practice & Procedure*, § 2284, pp. 767-772

> F.    The Debtor Was Entitled to Adequate Warning that a Sanction of Disallowance of his Exemptions Would Result from a Failure to Adequately Respond to the Court's Order of December 13, 2013.

Standard of Review: *de novo*

A sanction of disallowance of the Debtor's claim of exemption is very similar to a dismissal with prejudice under Fed. R. Civ. P. 41(a)(2).  When such a draconian remedy as a final determination, is invoked, before a hearing on the merits, some notice is necessary.  Because this invokes due process rights, this issue is considered by this Court *de novo.*

This Circuit, in ***Choice Hotels, International, Inc. v. Goodwin & Boone***, 11 F.3d 469 (4th Cir. 1993) set forth the required notice for the draconian result of dismissal of a litigant's claims:

> ...Rule [41(a)(2)] requires the district court's specification to be explicit and clear.  First, from the standpoint of the plaintiff, fairness demands it. When a plaintiff fails to satisfy the district court's stated conditions and his action is dismissed with prejudice, the consequence is draconian--his claims, however meritorious, are forever barred from being heard on their merits. The plaintiff is entitled to be made aware of this drastic consequence of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid it. His awareness is only effectively ensured when the district court specifies explicitly and clearly that the consequence of failure to meet its conditions is prejudicial dismissal ... Considerations of constitutional due process also suggest that the district court's warning must be explicit and clear.

***Id.***, at 471.   Rather than address this issue, the District Court simply noted that there was adequate notice because the Motions filed by the Trustee and Wilson made clear that they were seeking the ultimate sanction - disallowance. Apx. 000455.  This, however, is a complete mischaracterization of the criteria established in this Circuit.  ***Choice Hotels*** and other cases, make clear that it is the Court's notice, that is, the bankruptcy court's, that must give notice to Abell of the potential ultimate sanction.  That simply did not happen.

In ***Societe Internationale v. Rogers***, 357 U.S. 197, 2 L. Ed. 2d 1255, 78 S. Ct. 1087 (1958), the Supreme Court recognized that "there are constitutional

limitations on the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id.* at 209 (citing *Hovey v. Elliott*, 167 U.S. 409, 42 L. Ed. 215, 17 S. Ct. 841 (1897)). *See also*, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982) (also citing *Hovey* with approval). *Societe Internationale, supra,* 357 U.S. at 209.

The Supreme Court emphasized that the provisions of Fed. R. Civ. P. 37 (Fed R. Bankr. P. 7037) "must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law. *Id.*

This Circuit stated clearly that prejudicial dismissals, analogous to the "remedy" imposed against the Appellant, constitutional due process concerns. Therefore, at least in this Circuit, courts should construe Rule 41(a)(2) (and similar draconian "takings")  to require explicit and clear notice to parties when their failure to meet the court's conditions will result in prejudicial dismissal. *Choice Hotels International, Incorporated, supra*, 11 F.3d at 471.  That simply did not happen here.

G.    The Sanction of Default Judgment is A Severe Sanction With a More Narrow Range of Discretion in the Trial Court.

Standard of Review:    Abuse of Discretion as stated in *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 505-06 (4th Cir. 1977)

The sanction of default judgment is the most severe in the spectrum of sanctions  provided by statute or rule." *National Hockey League v. Met. Hockey Club*, 427 U.S. 639, 643 (1967).  As previously stated, this Court's review of that discretion is an abuse of discretion standard but under a more narrow range of discretion.

In *Wilson v. Volkswagon of America, Inc.*, the Fourth Circuit surveyed the cases throughout the country on the issue of sanctions for failure to obey court ordered discovery.  As previously noted, this Circuit stated that in the situation in which the sanction imposed is default judgment, "the Trial Court's "range of discretion is more narrow" than when the Court is imposing other less severe sanctions.  561 F.2d at 503 (citation omitted).

"Particularly is the Court to act cautiously when the sanction imposed is that of default judgment." *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir. 1976), cited in *Wilson*, 561 F.2d at 505.  The Bankruptcy Court exercised no caution, failed to review the actual status of discovery and unfairly and improperly accepted the position of Wilson over that of the Court and the Trustee.

40

Even in those cases where it may be found that failure to produce discovery results in prejudice to the discovering party's case, it is the normal rule that the proper sanction "must be no more severe ... than is necessary to prevent prejudice to the movant." *Id.*, citing *Diaz v. Southern Drilling Corp*, 427 F.2d 1118, 1127, *cert. denied sub nom*, *Trefina v. United States*, 400 U.S. 878 (1970). *See also*, *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974) ("Appellate Courts frequently have found abuse of discretion when trial courts failed to apply sanctions less severe than dismissal."). In this case, extending discovery for a period that would not delay trial would have been a more than sufficient remedy and, a remedy stated by the Court and suggested by the Trustee, the party representing the interests of all creditors.

The District Court factual analysis, below, is, at best, perplexing. For example, the District Court states that the reason Judge Mannes did not consider a lesser sanction is that "Abell testified that his failure to comply was due to the unwillingness of his estranged wife to cooperate, as she is the party who holds the documents at issue." Apx. 000451. The source of this statement is confusing, and makes the District Court's analysis suspect. As is evident from the Hearing Transcript (Apx. 000399), not only did Mr. Abell not testify, he was not even at the hearing. More particularly, he could not provide any assistance as to the documents previously produced. And, Abell's counsel explained in great detail

41

the issues involved for Mr. Abell to provide discovery while in jail and while Ms.

Bertola was under the pressure of incarceration for her own alleged discovery

deficiencies in the Superior Court. Apx. 000413-422.

The Bankruptcy Court determined that the appropriate "sanction" was to

extend discovery for three weeks. Only after the objection of counsel for Wilson,

did the Court take the sanctions request under advisement. Apx. 000426-427.

The record of the hearing on February 12, 2014 is clear that the Court determined

that lesser sanctions were appropriate but was improperly influenced by counsel

for Wilson to issue the ultimate sanctions contained in the Court Orders appealed

from. The Trustee, the arguably real party in interest, raised no such objection.

"... Where any of the more severe sanctions [under Rule 37] is imposed, for

example, it is reversible error to neglect to consider the milder sanctions."  Note,

*Standards for Imposition of Discovery Sanctions*, 27 *Me. L. Rev* 247, 266 (1975),

quoted in ***Wilson***, ***supra***, 561 F.2d at 505.

The issue of materiality is always open on appeal.  8 Wright & Miller,

*Federal Practice & Procedure*, § 2289, p. 791.

> If sanctions are imposed under Rule 3(d), however, on appeal from
> the order imposing sanctions the appellate court will consider the
> propriety of the prior order for discovery.

In the case of *Choice Hotels International, Inc. v. Goodwin & Boone*, 11 F.3d 469 (4th Cir. 1993) the Court stated:

> ...a plaintiff is entitled, before forever losing his potentially meritorious claims, to a[n]... order that warns him explicitly of the threat of prejudicial dismissal. In other words, a ...court should not prejudicially dismiss the claims of a plaintiff who failed to comply with its conditions when it only implied to the plaintiff that his failure would have this draconian result.

11 F.3d at 473.

Considerations of constitutional due process also suggest that the district court's warning must be explicit and clear. In *Societe Internationale v. Rogers*, 357 U.S. 197 (1958), the Supreme Court recognized that "there are constitutional limitations on the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id.* at 209 (citing *Hovey v. Elliott*, 167 U.S. 409, 42 L. Ed. 215, 17 S. Ct. 841 (1897)). *See also Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) (also citing *Hovey* with approval).

In the *Wilson v. Volkswagon of America, Inc.* case, the court determined that the defendants engaged in "a willful and deliberate attempt, successful attempt, on the part of the defendants in this case to withhold information properly discoverable." At a hearing on a request to reconsider the court broadened its

43

ruling to include "a wilful and deliberate failure to come forward with the names of the cases that are properly discoverable." The appellate court concluded that the trial court's decision rests solely on a finding of failure to disclose properly discoverable "roof intrusion and flexible couple[ing] tests" and "the names of the cases."

*In re Professional Hockey Antitrust Litigation*, 63 F.R.D. 641, *rev'd*, 531 F.2d 1188, *rev'd*, 427 U.S. 639 (1976) illustrates the procedure to be followed when a trial court exercises the power to grant the sanction of default judgment. "The trial court found that the interrogatories addressed to the Plaintiff, and unanswered were "crucial interrogatories" which went to the heart of the discovering party's defense and were thus clearly material; that the plaintiff admitted on a number of occasions that he had available to him the information required for the Interrogatories; that the plaintiff had been given at least five extensions, some made out of time and granted with warnings of possible sanctions, for answering the Interrogatories, always on the representation, never honored, that, if granted, answers would be duly filed; that these delays had forced at least three postponements of a trial date; and that any lesser sanction, such as denial of right in plaintiff to prove the matters not responded to by it, was not a reasonable alternative to default judgment, since the practical effect of denial of

right to prove material by the plaintiff would be to make, imperative judgment in favor of the defendants." *Wilson*, at p. 505.

The Trial Court carefully evaluated "the needs of the discovering party," considered the effect on non-compliance on the "ability [of the defendants] to establish their case" and concluded that no remedy other than default judgment would "prevent prejudice to the movant." These findings, fully detailed in the Trial Court's order, clearly supported the grant of a default judgment "by reason of [plaintiffs'] 'flagrant bad faith' and their counsel's 'callous disregard' of their counsel's 'callous disregard' of their responsibilities." 427 U.S. at 643.

A discovery sanction of dismissal is an "extreme and harsh remedy" that is "appropriately imposed only in cases of willfulness, bad faith, or reasonably serious fault." *Commercial Cleaning Servs., L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 386 (2d Cir. 2001); *see also Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). Only an "egregious, abusive disregard of a court order ... would justify" such a sanction. *Commercial Cleaning Servs.*, 271 F. 3d at 387.

Circumstances where courts have found a party's noncompliance with a court's order sufficiently willful and egregious to merit a discovery sanction of dismissal are extreme. They include plaintiffs who refused to respond to interrogatories for three years, despite multiple court orders and the imposition of

45

monetary sanctions, *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979); plaintiffs who failed to respond to interrogatories for years despite a court order, and then offered perjurious testimony in an attempt to cover up their noncompliance, *see Indep. Investor Protective League v. Touche Ross & Co.*, 607 F.2d 530, 534 (2d Cir. 1978); and plaintiffs who failed to comply with five court orders, *see Nieves*, *supra,* 208 F.R.D. at 536.  A party's noncompliance must be extreme in order to merit a discovery sanction of dismissal. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, *supra*, 427 U.S. at 639 (affirming discovery sanction of dismissal where plaintiffs' interrogatory responses remained substantially unanswered despite numerous extensions, admonitions by the court, and broken promises by the plaintiffs); *Abreu v. City of New York*, 208 F.R.D. 526 (S.D.N.Y. 2002) (granting discovery sanction of dismissal where plaintiff failed to respond to discovery requests, reminders of its discovery obligations by defendants, and three court orders over a period of two years); *Hochberg v. Howlett*, 92 Civ. 1822, 1994 U.S. Dist. LEXIS 5617, 1994 WL 184337 (S.D.N.Y. April 28, 1994) (granting discovery sanction of dismissal where plaintiffs failed to fully respond to document requests or appear for scheduled depositions repeatedly and despite written and oral court orders made in response to defendants' motion to compel). *Cf. Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1360-61 (2d Cir.

1991) (affirming preclusion of a defense where defendant failed to comply with a court order and subpoenas, then "engaged repeatedly at [a] deposition in behavior designed to thwart the discovery process"); ***Thomas E. Hoar, Inc. v. Sara Lee Corp.***, 882 F.2d 682, 687 (2d Cir. 1989) (affirming imposition of monetary discovery sanction where plaintiffs "neglected to respond of their own initiative, ignored due dates, necessitated defendants' motions to compel, and disobeyed at least two previous court orders before the sanction was imposed").

In this case, the Appellant acted in good faith, timely provided substantially all requested discovery, and the discovery alleged to be "missing" was either already provided, or provided prior to the February 12, 2014 hearing, more than three months before the scheduled evidentiary hearing.

V.    CONCLUSION

For the reasons stated above, the Appellant asserts that there has been an abuse of discretion in the Bankruptcy Court which resulted in the Orders of February 18, 2014 and February 24, 2014, that the Bankruptcy Court and the District Court failed to consider the four factors established in this Circuit for the issuance of the sanction of default and that the subject Orders were entered without proper notice and without the ability of the Appellant to effectively participate in the Court hearings resulting in the sanctions imposed by those Orders. For those reasons and those argued hereinabove, the Appellant requests

that the Order of the District Court dated July 3, 2014 (Apx. 000461) be reversed and this matter be remanded to the District Court with instructions to reverse the Bankruptcy Court Orders of February 18th and February 24th, 2014 and remand to the Bankruptcy Court with instructions to set the matter of the Appellant's claimed exemptions of his Profit Sharing Plan and Roth IRA for an evidentiary hearing and other matters consistent with the Court's decision in this matter.

Dated: September 25, 2014                    Respectfully Submitted,

                                            HUGHES & BENTZEN, PLLC


                                            By: /s/ Philip J. McNutt
                                            Philip J. McNutt, Federal Bar No. 08555
                                            1100 Connecticut Avenue, NW
                                            Suite 340
                                            Washington, DC 20036
                                            202-293-8975
                                            202-293-8973 (fax)
                                            pmcnutt@hughesbentzen.com

                                            COUNSEL FOR THE APPELLANT,
                                            VINCENT L. ABELL

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*10,733*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Corel WordPerfect 12*] in [*14pt Times New Roman*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>September 25, 2014</u>          <u>/s/ Philip J. McNutt</u>
                                        *Counsel for Appellant*

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 25th day of September, 2014, I caused this Brief

of Appellant and Joint Appendix to be filed electronically with the Clerk of the

Court using the CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users:

Randell C. Ogg
LAW OFFICES OF RANDELL C. OGG
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C.  20036
(202) 862-4323

*Counsel for Appellee Wilson*

Richard M. Goldberg
Anastasia L. McCusker
SHAPIRO, SHER, GUINOT & SANDLER
36 South Charles Street, 20th Floor
Baltimore, Maryland  21201
(410) 385-4274

*Counsel for Appellee Schlossberg*

I further certify that on this 25th day of September, 2014, I caused the

required copies of the Brief of Appellant and Joint Appendix to be hand filed with

the Clerk of the Court.

/s/ Philip J. McNutt
*Counsel for Appellant*