NO. 14-1771

I<small>N</small> T<small>HE</small>

# United States Court of Appeals for the Fourth Circuit

_____

In re:  VINCENT L. ABELL

*Debtor*

_____

VINCENT L. ABELL

*Debtor-Appellant*

v.

MARIA-THERESA WILSON,

*Judgment-Creditor-Appellee*

and

ROGER SCHLOSSBERG,

*Chapter 11 Trustee-Appellee*

_____

Appeal from the

United States District Court

for the District of Maryland

_____

**BRIEF FOR APPELLEES**

_____

Richard M. Goldberg

Anastasia L. McCusker

Shapiro, Sher, Guinot, & Sandler

36 S. Charles St., Ste. 2000

Baltimore, MD 21201

Tel. (410) 385-4241

Fax (410) 539-7611

rmg@shapirosher.com

alm@shapirosher.com

*Counsel for Appellee*

*Roger Schlossberg, Trustee*

Randell C. Ogg

Law Offices of Randell C. Ogg

1150 Connecticut Avenue NW, 9th Floor

Washington, DC 20036

Tel. (202) 862-4323

Fax (202) 828-4130

rogg@bode.com

*Counsel for Appellee*

*Maria-Theresa-Wilson*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF ISSUES PRESENTED .............................................. 1

STATEMENT OF THE CASE ............................................................. 1

STATEMENT OF THE FACTS ........................................................... 3

    Abell's Incarceration in the District of Columbia for Contempt of Court .......... 3

    The Bankruptcy Court's Discovery Order of December 13, 2013 .................... 7

    The Bankruptcy Court's Sanctions Order of February 24, 2014 ..................... 9

    The Sanction Order Relating to Trustee's Discovery .................................. 13

    The Superior Court's Subsequent Findings Regarding Abell's  Continuing Non-Compliance with Its Discovery Order ................................................. 16

STANDARD OF REVIEW ................................................................. 19

SUMMARY OF ARGUMENT .......................................................... 19

ARGUMENT .................................................................................. 22

    I.    ABELL HAS WAIVED HIS ABUSE OF DISCRETION ARGUMENT BECAUSE HIS ARGUMENT IS BASED ON MADE-UP "FACTS" WHICH FIND NO SUPPORT IN THE RECORD ........................................ 22

    II.    THERE IS NO DUE PROCESS REQUIREMENT THAT THE PARTY BE PHYSICALLY PRESENT AT A MOTION HEARING ........................... 25

        A.    Abell Waived All Claims as to the November 21, 2013 Hearing ....... 27

        B.    Abell Waived All Claims as to His Alleged Inability to Attend the February 12, 2014 Hearing .................................................. 28

    III.  THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN SHAPING AN APPROPRIATE REMEDY FOR ABELL'S INTENTIONAL VIOLATION OF THE COURT'S DISCOVERY ORDER .............................. 28

    IV.  ABELL PROVIDED NO CREDIBLE EVIDENCE TO SUPPORT HIS CLAIM THAT HIS INCARCERATION PREVENTED HIM FROM

COMPLYING WITH HIS DISCOVERY OBLIGATIONS AND IT WAS NOT "CLEAR ERROR" FOR THE BANKRUPTCY COURT TO REJECT THAT CONTENTION ...................................................................35

    A.    Legal Framework ................................................................36

    B.    The Record Does Not Support Abell's Contention that He Could Not Substantially Comply with the Discovery Order ................................37

    C.    Abell's Factual Assertions in His Brief about His Incarceration Are Mostly without Record Support ...........................................42

    V.    THE CONSTITUTION DOES NOT GUARANTY A PARTY THAT WILLFULLY VIOLATES A COURT ORDER THE RIGHT TO A TRIAL ON THE MERITS ...................................................................43

    VI.    THE "WARNING" ARGUMENT IS WITHOUT LEGAL MERIT ........44

CONCLUSION .................................................................................48

APPELLEES' STATEMENT REGARDING ORAL ARGUMENT ....................49

CERTIFICATE OF COMPLIANCE ........................................................49

ADDENDUM (LOCAL RULES AND REGULATIONS)..................................50

    A.    Maryland Bankruptcy Local Rules ...........................................51

    B.    District of Columbia Dept. of Corrections Policy and Procedures for Access to Legal Counsel, No. 4160.3G (December 21, 2012).........................51

TABLE OF AUTHORITIES

**Cases**

*11126 Baltimore Boulevard v. Prince George's County*, 58 F.3d 988 (4th Cir. 1995) ...................................................................................................24

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000)............................................27

*Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians,* 155 F.3d 500 (4th Cir. 1998) ................................................... 19, 33

*Atkins v. Fischer,* 232 F.R.D. 116 (D.C. Cir. 2005) ................................30

*Chairs v. Burgess*, 143 F.3d 1432 (11th Cir.  1998)................................37

*Chambers v. Nasco, Inc*., 501 U.S. 32 (1991) ..........................................43

*Chicago Truck Drivers v. Brotherhood Labor Leasing,* 207 F.3d 500 (5th Cir. 2000)..........................................................................................................37

*Choice Hotels International, Inc. v. Goodwin & Boon*, 11 F.3d 469 (4th Cir. 1993) ...................................................................................................44

*Davidson v. Dean*, 204 F.R.D. 251 (S.D.N.Y. 2001) ........................ 36, 46

*Emory v. McDonnell Douglas Corp.*, 148 F.3d 347 (4th Cir. 1998)......................46

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315 (4th Cir. 2008)...35

*F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico*, 563 F.3d 1 (1st Cir. 2009)......................................................................................................25

*Felman Production, Inc. v. Industrial Risk Insurers*, 2011 U.S. Dist. LEXIS 112161, 2011 WL 4547012 (S.D.W.Va., Sept. 29, 2011) ...............................31

*Gaddis v. Abell (In re Gaddis)*, 2006 Bankr. LEXIS 4312 (Bankr. D. Md. July 12, 2006)..........................................................................................................11

*Hammond Packing Co. v Arkansas*, 212 U.S. 322 (1909) .......................43

*Hathcock v. Navigator International Trans. Corp.*, 53 F.3d 26 (4th Cir. 1995) ......46

*Hillson Partners Ltd. Partnership v. Adage, Inc*., 42 F.3d 204 (4th Cir. 1994)......47

*Hissom v. New York City Dep't of Housing*, 1987 U.S. Dist. LEXIS 13372, Civ. No. 86-2340, 1987 WL 45807 (S.D.N.Y. Dec. 22, 1987) ...................................30

*Holly Hill Farm Corp. v. United States*, 447 F.3d 258 (4th Cir. 2006)....................27

*Huber v. Marine Midland Bank*, 51 F.3d 5 (2d Cir. 1995)......................................36

*In re Kustler*, 914 F.2d 505 (4th Cir. 1990)............................................................36

*In re Lawrence*, 279 F.3d 1294 (11th Cir. 2002)....................................................37

*In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc*., 453 F.3d 225 (4th Cir. 2006) ............................................................................19

*In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991)..........................37

*In re: Goldschein,* 244 B.R. 595 (Bankr. D. Md. 2000)..........................................41

*Jacksonville Airport, Inc. v. Michkeldel, Inc.,* 434 F.3d 729 (4th Cir. 2006)..........19

*Johnson v. Comm'r of Internal Revenue,* 289 F.3d 452 (7th Cir. 2002) ................30

*Kenneth v. Nationwide Mutual Fire Ins. Co*., 2007 U.S. Dist. LEXIS 83973, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007)...................................................... 36, 38

*King v. Sears Roebuck & Co.*, 2013 U.S. Dist. LEXIS 24887 (S.D.W.Va. February 22, 2013)...................................................................................................34

*Link v. Wabash River Railroad*, 370 U.S. 626 (1962)...................................... 30, 44

*Lowe v. Veliz (In re: Texas Bumper Exchange)*, 333 B.R. 135 (Bankr. W.D. Tex. 2005)...................................................................................................25

*Melkersen v. Ray Constr. Co.*, 315 B.R. 45 (Md. Bankr. 2004)..............................34

*Modern Mgmt. Co. v. Wilson*, 997 A.2d 37 (D.C. 2010), *cert. denied,* __ U.S. __, 181 L. Ed. 2d 26, 132 S. Ct. 111, 2011 WL 5902515 (2011). ..............................3

*Mut. Fed. Sav. & Loan v. Richards & Assocs., Inc.*, 872 F.2d 88 (4th Cir. 1989) 29, 30, 33, 35

*Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639 (1976) .......................33

*Pesaplastic, C.A. v. Cincinnati Milacron Company,* 799 F.2d 1510 (11th Cir. 1986) ...........................................................................................................37

*Projects Mgmt. v. Dyncorp Int'l LLC*, 734 F.3d 366 (4th Cir. 2013)............... 23, 24

*Roadway Express v. Piper*, 447 U.S. 752 (1980) ..................................................43

*Salvin v. American National Insurance Co.*, 281 Fed Appx. 222 (June 10, 2008, 4th Cir.)...................................................................................................36

*SEC v. Solow*, 682 F.Supp.2d 1312 (S.D. Fla. 2010) ...........................................37

*Travelers Ins. Co. v. St. Jude Hosp.,* 38 F.3d 1414 (5th Cir. 1994) .......................30

*United States v. Butler*, 211 F.3d 826 (4th Cir. 2000) ..........................................36

*United States v. Hayes*, 722 F.2d 725 (11th Cir. 1984) .........................................37

*United States v. Nineteen Thousand Dollars in US Currency*, 2012 U.S. Dist. LEXIS 151807 (C.D. Ill. October 23, 2012) .......................................................36

*United States v. Ryan*, 402 U.S. 530 (1971) ........................................................37

*United States v. Rylander*, 460 U.S. 752 (1983)...................................................36

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 479 (D. Md. 2010) ...........43

*Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599 (4th Cir. 2009)................24

*White v. Wirtz*, 402 F.2d 145 (10th Cir. 1968)......................................................25

*Young Again Prods, Inc. v. Acord,* 459 Fed. Appx. 294 (4th Cir. 2011) , *cert denied*, __ U.S. __, 133 S. Ct. 140, 184 L. Ed. 2d 30 (2012) .............................. 19, 29, 44

**Rules**

4th Cir. L.R. 28(f) ........................................................................ 23, 24

Fed. R. App. P. 28(a)(9)(A) ...............................................................24

Fed. R. Bankr. P. 7037 .......................................................................9

Fed. R. Civ. P. 37(a) ........................................................................25

Fed. R. Civ. P. 37(b) .......................................................... 25, 30, 43, 45

Fed. R. Civ. P. 37(b)(2)(A) ........................................................ 2, 9, 10

Fed. R. Civ. P. 37(b)(2)(A)(v) ...........................................................44

Fed. R. Civ. P. 41 ...........................................................................44

Md. Bankr. L.R. 5071-1(a) ...............................................................28

Md. Bankr. L.R. 5071-1(b) ...............................................................28

**Regulations**

D.C.  Department of Corrections Policy and Procedures for Access to Legal Counsel, No. 4160. 3G (December 21, 2012) .......................................39

## STATEMENT OF ISSUES PRESENTED

1.      Did the bankruptcy court abuse its discretion in its Order of February 24, 2014 imposing sanctions on Debtor Abell for his willful failure to comply with the Court's Discovery Order of December 13, 2013.[1]

2.      Did the bankruptcy court abuse its discretion in its Order of February 18, 2014 imposing sanctions on Debtor Abell for his willful failure to comply with the discovery served upon him by the Trustee.

## STATEMENT OF THE CASE

This case arises out of (a) Debtor Abell's willful failure to provide the discovery the bankruptcy court ordered Abell to produce on December 13, 2013 relating to Abell's claims that the funds in a certain "Roth IRA" account and in a "retirement account" he controlled were exempt properties, and (b) Abell's related refusal to provide basic discovery on that same issue to the Trustee.  By Order of December 13, 2013, the bankruptcy court ordered that Abell provide the requested discovery, but Abell failed to comply with that Order.  Likewise, Abell completely failed to respond to the Trustee's interrogatories (even after an agreed-upon extension) until the eve of the sanction hearing, and then provided incomplete responses.

---

[1]If this Court affirms the Order of February 24, 2014 as to Wilson, that would, as a practical matter, moot Abell's appeal as to the Order regarding the Trustee's discovery (Appellees' Issue No. 2).

1

The record before the bankruptcy court included (a) that Abell had a long history of willful refusals to obey court orders to provide discovery for which he had been previously sanctioned, (b) that Abell's willful refusal to provide the key information about his "exemption" claims was prejudicial to Wilson and the Trustee, and (c) that Abell had no legitimate excuse for his failure to obey the Court's Order or respond to the Trustee's discovery request, such that it was apparent that Abell was thumbing his nose at the bankruptcy court, just as he has been doing to other courts and other opponents for years.  In accordance with Fed. R. Civ. P. 37(b)(2)(A), the bankruptcy court determined that the appropriate sanction under the circumstances was to dismiss Abell's exemption claims relating to the Roth IRA and retirement accounts.  A similar determination was made by the bankruptcy court as to Abell's related failure to provide discovery to the Trustee.

This Discovery Order that Abell violated related to only two of Abell's numerous exemption claims, and the sanctions the bankruptcy court imposed were narrowly tailored to only those <u>two</u> exemption claims.  The sanctions left intact all of Abell's other exemptions claims and <u>all</u> other claims and defenses that Abell has asserted (or will assert) in the ongoing Bankruptcy Matter or various adversary proceedings that have been filed.

## STATEMENT OF THE FACTS

The "Statement of Facts" in Appellant's Brief largely comprises conclusory statements by Abell's counsel as to what he contends happened, without reference to the record below or otherwise.  Appellees Wilson and the Trustee provide the foregoing counter-statement because many of Abell's "statements" are untrue and unsupported .

### Abell's Incarceration in the District of Columbia for Contempt of Court

1.      Appellee Wilson is a Judgment-Creditor of Abell.  The Judgment stems from a lawsuit in the District of Columbia filed in 2004 by Wilson against Abell arising out of Abell's fraudulent mortgage rescue scheme, which tricked Wilson into signing documents in which she unwittingly deeded her home to Abell for only $5,000.  After a seven-day trial, the jury found both common law and statutory fraud by Abell, and Wilson was awarded compensatory damages, punitive damages, and attorney fees from Abell.  The Judgment was affirmed by the Court of Appeals for the District of Columbia.  *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37 (D.C.  2010), *cert. denied,* __ U.S. __, 181 L. Ed. 2d 26, 132 S. Ct. 111, 2011 WL 5902515 (2011).  The concurring opinion noted that Abell "preyed on Wilson as a financially distressed and vulnerable homeowner, and for that [he] richly deserves the sting of a punitive damages judgment."  *Id.* at 64.  Numerous

3

other lawsuits have been brought against Abell by other victims of his fraudulent

mortgage rescue practices.  J.A. 171-72.[2]

2.    Wilson then initiated collection efforts in the Superior Court against

Abell, including the service of standard requests for production of documents and

creditor's interrogatories on Abell.  J.A. 41-69.  Abell failed to comply with the

discovery requests and Wilson moved to compel.  J.A. 25.

3.    In ruling on that matter on March 1, 2013, Judge Cheryl N. Long of

the Superior Court outlined in clear terms to Abell that he had started on a path of

obstructive behavior which the Court wanted stopped.  D-20-4, pp. 4-5.  As to all

this, Judge Long specifically found that "[Abell's] pattern of behavior constitutes

obstruction of the discovery process…" *Id.* at 7.

4.    However, Abell did not comply with that Court Order, and Wilson

moved for sanctions and an order of contempt.  On March 1, 2013 Judge Long, in

her 36-page Memorandum and Order found:

(a) that Abell has avoided the production of documents relating to numerous
of the limited liability companies he had created or trusts in which he had some
form of control (J.A. 196-7, 200).

(b) that Abell "has withheld from the plaintiff a large amount of
documentary evidence…"  (J.A. 200)

---

[2] References to the record in the underlying Bankruptcy Case are designated as "D-
x" with the number referring to the Docket Entry Number.  References to the
record in the District Court matter are designated as "DC-x."  "J.A." refers to the
Joint Appendix.  "S.A." refers to the Supplemental Appendix.

(c) that Abell "admitted that he had applied his own, self-serving tactics for collapsing the amount of information that he would provide to the plaintiff."  (J.A. 201)

(d) that "[w]ithout question, [Abell] had been secreting documents and information, failing to make even a rudimentary effort to retrieve information where it was stored…"  (J.A. 204)

(e) that it was "established by clear and convincing evidence that defendant Abell has acted in contempt of this Court's [Order] of February 10, 2012…"  (J.A. 204)

(f) that Abell "blatantly flouted this Court's order to produce that material" and that "his excuses are absurdly inadequate, incredible, and manipulative."  (J.A. 205)

(g) that "Abell was not a believable witness for himself and his entire demeanor revealed him to be unreliable and evasive."  (J.A. 205)

(h) that Abell has a long history of "prior discovery misconduct" in which "he refuses to comply with discovery orders, he does so purposefully and not as a result of mistake, inadvertence, accident, or innocent misunderstanding of the potential consequences."  (J.A. 209)

(i) That Abell's "entire enterprise of evading the satisfaction of the judgment has become a virtual cottage industry."  (J.A. 211)

J.A. 183-218.

5.  Judge Long found Abell in contempt of Court and found that incarceration was the appropriate sanction under the circumstances, but gave Abell a 30-day stay of enforcement of that Order to allow Abell one further chance to fully comply with her Orders.  J.A. 187, 214.

6.  Rather than comply with Judge Long's Order, Abell sought refuge in the automatic stay provisions of the Bankruptcy Code by voluntarily filing his Chapter 11 bankruptcy just four days after that Order.  D-1.

7.   Wilson moved immediately to lift the stay.  D-20.  The bankruptcy court rejected Abell's argument that enforcement of the March 1, 2013 Superior Court Order would interfere with the administration of Abell's estate.  On April 26, 2013 the bankruptcy court lifted the automatic stay as to the Contempt Order.  In doing so, the bankruptcy court stated as follows:

> [Abell] complains of the threat of incarceration, but that would only occur should he fail to deliver the long sought for discovery.  He truly has the key to the jail door in his pocket.

D-66, p. 4.

8.   After the stay was lifted by the bankruptcy court, Abell continued to ignore Judge Long's March 1, 2013 Contempt Order.  As a result, Abell was found by the Superior Court to be in willful contempt of court and Abell was incarcerated in the District of Columbia Jail starting on November 18, 2013.  J.A. 170, at ¶6. Abell continued to defy the Superior Court's Order, and he remained incarcerated in the D.C. Jail until April 28, 2014, when he was conditionally released to a "half-way house," so that he could meet with counsel during working hours and go to his place of business in order to comply with the Court's Order.  S.A. 14-15; Brief, 20. But to this date, despite the access he has been granted, Abell has not come into substantial compliance with the Superior Court's orders to provide the discovery and he remains incarcerated at the "half-way house" facility because of that failure. *See* ¶¶36-42, *infra* at pp. 17-19.

6

<u>The Bankruptcy Court's Discovery Order of December 13, 2013</u>

9.     On March 27, 2013 Abell filed his Amended Schedule C,
affirmatively claiming under penalty of perjury that $175,000 of the funds in the
Modern Management Company Employment Benefit Trust ("MMC-EBT") and the
funds in a certain "Roth IRA" were exempt retirement accounts under Maryland
law.  D-26, Schedule C.  Abell also claimed exemptions as to multiple other
properties, including the twelve properties which he claimed that he owned as
tenancies by the entirety with Marta Bertola.  *Id.*

10.     On May 22, 2013 Wilson filed objections to fourteen of those
exemption claims.  J.A. 7-10.  Creditor Wilson, *inter alia*, claimed that Abell's
MMC-EBT was not a *bona fide* retirement plan that was operated in accordance
with the applicable federal regulations.  J.A. 9.  The assets in that MMC-EBT were
not transfers of profits from Modern Management Company, but rather were
personal assets that Abell transferred to that entity to avoid creditors.  Further, it
appeared that Abell did not treat the funds in the MMC-EBT as a *bona fide*
retirement account, but rather he regularly transferred MMC-EBT funds to himself
and related entities outside of the Plan's provisions.  Wilson also contended that
the "Roth IRA" was not a *bona fide* retirement plan and that the IRA account was
not based upon qualified transfers by Abell to that account.  J.A. 9.  Under

applicable law, such facts render the MMC-EBT and Roth IRA non-exempt and thus available to satisfy Abell's creditors' claims.

11.    The bankruptcy court authorized discovery on the exemption objections Wilson made, setting the matter down for an evidentiary hearing.  D-127, D-147.

12.    On July 10, 2013, Wilson served her First Request for Production of Documents and her First Set of Interrogatories on Abell.  J.A. 40-69.  This discovery sought to establish, *inter alia*, that Abell treated the "retirement" accounts as his personal piggy bank by making unauthorized "loans" from those accounts to himself and that the monies transferred into those accounts were not true retirement funds from his employer.  *Id.*

13.    Abell failed to produce most of the requested documents and he failed to answer Interrogatory 5 regarding the "loans" Abell made to himself from the MMC-EBT funds.  Thus, on October 8, 2013, Wilson moved for an order compelling compliance with the requested discovery.  J.A. 25-91.  Abell filed no written opposition to that motion.  The Chapter 11 Trustee joined in Wilson's Motion.  D-300.

14.    On November 21, 2013, three days after Abell's incarceration in the District of Columbia, there was a hearing on Wilson's motion to compel before the bankruptcy court.  Abell's incarceration for contempt was disclosed to the

8

bankruptcy court.  J.A. 114 (16-18).  Abell's counsel did not contend that compliance with any future discovery order in the Bankruptcy matter would be hindered by Abell's incarceration or request that the bankruptcy court delay its ruling until Abell had purged himself of that contempt.  On the contrary, Abell opposed the Trustee's discovery deadline extension (through a Motion to Reconsider, also heard at the November 21 hearing), arguing that an extension was prejudicial to his due process rights by causing an unreasonable delay in adjudicating his exemptions.  J.A. 100-06, 130(9-17).

15.    On December 13, 2013 the bankruptcy court granted Wilson's motion to compel and ordered Abell, *inter alia*, to produce the designated documents and to answer Interrogatory No. 5 within 28 days (January 10, 2014).  J.A. 142-44. Abell was still incarcerated for contempt.  Following entry of this Order, Abell did not petition the bankruptcy court for an extension of time or otherwise contend to the bankruptcy court that Abell would not be able to comply with the Court's Order due to his incarceration.

<u>The Bankruptcy Court's Sanctions Order of February 24, 2014</u>

16.    January 10, 2014 came and went and Abell did not comply with the bankruptcy court's Discovery Order.  J.A. 171, ¶9.

17.    Wilson then moved, pursuant to Fed. R. Civ. P. 37(b)(2)(A) and Bankruptcy Rule 7037, for an order imposing appropriate sanctions on Abell for

his failure to comply with the Discovery Order of December 13, 2013.  J.A. 168-181.  That Motion sought to dismiss Abell's claim that the two accounts were exempt, or alternatively to establish certain facts to which the discovery was directed and to preclude Abell from introducing evidence to the contrary, which are among the sanctions outlined in Fed. R. Civ. P. 37(b)(2)(A)) for violation of a discovery order.  J.A. 173-77, 179-80.

18.     Wilson's Motion documented Abell's long history of violating court discovery orders and outlined the prior sanctions that had been entered against Abell for his serial violations of such orders:

a.      *Wilson v. Abell*, D.C. Superior Court, Case No. 2004 CA 007270 B. Judge Long's Contempt Order lays out Abell's long and repeated history in that regard in multiple jurisdictions (including the D.C. Superior Court, Montgomery County Circuit Court, and the United States District Court for the District of Columbia) and in the *Wilson v. Abell* matter.

b.      *U.S. Bank v. Hall, et al.* D.C. Superior Court, Case No. 2010 CA 000886 B (March 28, 2012) (striking Abell's defenses because of Abell's "complete, consistent, and continuing failure to acknowledge, much less comply with, [his] obligations" to respond to discovery requests and court orders."  Judge Epstein further noted that "consistent with their prior conduct, none of the defendants responded to the motion within the time period allowed with Superior Ct. Civ. Rule 12-I(e) …").

c.      *Cissel, et al. v. Abell, et al.*, Montgomery County Circuit Court, Case No. 262366-V (August 1, 2008).  The Court noted this history about Abell:

Prior to the commencement of trial, the Court found that Defendants Abell and MMC violated this Court's Discovery Orders of December 29, 2006, April 19, 2007, June 21, 2007, and September, 2007.…  Counsel for Cissels were forced to file motions, attend discovery dispute hearings, attend depositions for which Abell was inappropriately unprepared, constantly follow-up with discovery requests, extend office hours, make telephone calls, and investigate and pursue

10

alternative methods to obtaining the discovery already ordered to be produced by this Court…. This Court intends to make a substantial award of attorney's fees as a sanction for discovery abuse.

d.    *Bilaal v. Abell, et al*. D.C. Superior Court, Case No. 2004 CA 007225 (February 6, 2006) (Abell sanctioned for failure to comply with prior discovery orders and Defendants Abell, Bertola, and Modern Management Company assessed costs and fees).

e.    *Bilaal v. Abell, et al.* D.C. Superior Court, Case No. 2004 CA 007225 (May 25, 2005) (Defendants Abell, Bertola, and Modern Management Company sanctioned for deposition obstruction and fees/costs assessed against them).

f.    *Williams v. Abell,* D.C. Superior Court, Case No. 2007-CA-06714-B (D.C. Sup. Ct.)(May 14, 2009) (Abell and his counsel, Marta Bertola, sanctioned $3,500 because of their failure to comply with discovery orders in that matter).

g.    *Williams v. Abell*, D.C. Superior Court, Case No. 2007-CA-06714-B (April 22, 2010) (Default judgment against Abell for failure to comply with discovery orders).

h.    *Darensburg v. Abell*, D.C. Superior Court, Case No. 02-CA-9332 (September 4, 2003) (Abell and Modern Management Company assessed fees and costs for failure to answer interrogatories).

i.    *In re Boone*, Bankr. D. Md., Case No. 02-61595-JS (Abell sanctioned $3,500  and default judgment  entered by Judge Schneider for failure to respond to Chapter 7 Trustee's interrogatories  and document requests).

j.    *In re Jennifer Lee Gaddis*, Bankr. D. Md., Case No. 03-10773 (Abell sanctioned by Judge Mannes of the bankruptcy court for failure to comply with Order to provide discovery by striking Answer to Complaint and taking certain facts as established).  Abell also failed to meet the requirements of the Court's October 27, 2006 Scheduling Order.  *Gaddis v. Abell (In re Gaddis)*, 2006 Bankr. LEXIS 4312 *4 (Bankr. D. Md. July 12, 2006).

J.A. 171-72.  The motion outlined why "lesser sanctions" were not adequate.  J.A.

175-77.

11

19.     On February 11, 2014, Abell filed his written Opposition.  D-382.
That opposition did not request a hearing.

20.     On January 23, 2014, the bankruptcy court set the sanctions motion
down for a hearing scheduled for February 12, 2014.  D-347.  Abell did not request
any delay in the hearing due to his incarceration.

21.     On the evening before the hearing on the sanctions motion, Abell
produced some of the documents but mostly failed to produce the documents
subject to the bankruptcy court's Discovery Order.  Abell also ignored that portion
of the Discovery Order that obligated him to disclose the "loans" he made to
himself from the MMC-EBT accounts.  (Interrogatory No. 5).  J.A. 404(23)-
409(2), 426(11)-429(2).

22.     On February 18, 2014 the bankruptcy court entered its Order
regarding Abell's failure to comply with the Trustee's discovery requests.  J.A.
437-39.  *See* ¶¶25-32, *infra*, at pp. 13-16.

23.     On February 24, 2014, the bankruptcy court entered its Order
regarding Abell's violation of the Court's December 13, 2013 Discovery Order
relating to Wilson.  J.A. 440-42.  That Order found a willful violation of the
Court's Order and that Abell's failure to comply was prejudicial to Wilson.  As a
sanction for that violation, the bankruptcy court denied and dismissed Abell's
exemption claims to the Roth IRA and the funds in the MMC-EBT.  *Id.*

24.     Abell moved to stay the bankruptcy court's sanctions order.  D-419.

The bankruptcy court denied that motion (J.A.443-45) and the Court's findings in

that Order included that "Debtor's failure to make disclosures and cooperate were

not in good faith as reflected in the dreary record of noncompliance that he sought

to excuse on his more recent incarceration."  J.A. 444.  The bankruptcy court

further found that the sanctions order was necessary to ensure that similar conduct

would be deterred.  J.A. 444.

### The Sanction Order Relating to Trustee's Discovery

25.     On November 14, 2013, the Trustee served his First Set of

Interrogatories to Vincent L. Abell, which contained ten interrogatories seeking

basic information relating to the MMC-EBT and Roth IRA.  J.A. 248-56.  On

December 5, 2013, Abell's counsel requested and obtained an extension to January

3, 2014, due to Abell's incarceration and other litigation pending against Abell.

*Id..* However, Abell did not respond to the Interrogatories by the agreed date.  *Id.*

26.     The Trustee then waited an additional ten days before demanding that

responses be provided and warning that "[a]bsent a satisfactory plan to resolve this

discovery issue, we will be forced to seek relief from the Court. …" J.A. 238.

Abell responded by claiming that he may have to request the information and

documentation from Ms. Bertola but he had not yet done so.  Abell claimed he

would communicate something on January 14, 2014.  *Id.*  However, he

13

communicated nothing by that date.  *Id.*

27.    Because Abell had neither answered the Interrogatories nor provided any further communication to the Trustee respecting the overdue responses, on January 21, 2014 the Trustee moved for sanctions in accordance with Fed. R. Civ. P.  37(a).  J.A. 6H, 235, 238.  The Trustee explicitly requested that the bankruptcy court sanction Abell by directing that certain facts related to the illegitimacy and non-exempt status of the MMC-EBT and Roth IRA be taken as established, prohibiting Abell from opposing the Trustee's and/or Wilson's claims as to the illegitimacy and non-exempt status of the MMC-EBT and Roth IRA, and/or striking Abell's exemption claims relating to the funds in the MMC-EBT and Roth IRA.  J.A. 244.

28.    At approximately 10:18 p.m. on February 11, 2014, the evening before the hearing, Abell filed his opposition to the Trustee's sanction motion, to which Abell attached an exhibit which provided incomplete, evasive, and insufficient answers.  J.A. 402(6-13); J.A. 328, 380.

29.    On February 12, 2014, the bankruptcy court held a hearing on the Trustee's and Wilson's Motions for Sanctions.  J.A. 399-430.  Counsel for all parties appeared and Marta Bertola was also present.  J.A. 422(5-15).  While Abell's counsel argued that Abell's incarceration hindered his ability to satisfy discovery obligations, no claim was made that Abell's absence from the hearing

14

constituted a due process violation.  *Id.* at 409(9)-13(3).  Nor did Abell's counsel present any evidence that he had taken any steps to arrange Abell's appearance at the hearing.

30.     The Trustee did not have the opportunity to review Abell's belated discovery responses, so the Trustee advised the bankruptcy court that, at a minimum, the responses would require supplemental and follow-up discovery because, for the <u>first</u> time, Abell revealed that "in respect to the Roth IRA he opened it in 1998, contributed a total of $4,000, but through investments and then losses has someone [sic] ended up with a balance in cash of approximately $228,000."  J.A. 402(14)-03(13).  In response to the bankruptcy court's inquiry, the Trustee stated that he was asking for two things:  an extension of the discovery deadline and/or the relief requested in his Motion for Sanctions, explaining that in support of the relief requested in the Motion for Sanctions, the Federal Rules of Civil Procedure do not contemplate failing to answer interrogatories "and then on the eve of a hearing on a motion for sanctions filing an answer and sort of saying no harm, no foul."  *Id.* at 403(15)-04(20).

31.     After argument, the bankruptcy court explained that "[f]or one thing, I'm going to extend discovery until May 1."  *Id.* at 425(14-15).  After requesting and receiving input from Wilson on whether to continue the hearing "to let the parties see if anything happens as a result of the eleventh hour filing last night" or

take it under advisement, the bankruptcy court concluded "I'll take this under advisement." *Id.* 426(11-14); 428(8-9). Abell filed no objection.

32.    On February 18, 2014, the bankruptcy court entered an Order granting the Trustee's Motion for Sanctions, ordering that the facts related to the non-exempt status of the MMC-EBT and Roth IRA are established in favor of the Trustee and that the Roth IRA and MMC-EBT were not established in compliance with applicable law and are not capable of exemption. J.A. 437-39.

### The Superior Court's Subsequent Findings Regarding Abell's Continuing Non-Compliance with Its Discovery Order

33.    Since Abell's initial incarceration in November, 2013, there have been multiple hearings before the Superior Court in which the Superior Court judges have made findings relating to whether (a) Abell's incarceration prevents him from complying with the discovery orders of the Superior Court, and (b) whether Abell has yet to come into substantial compliance with the order of the Superior Court to fully disclose his assets and prior transfers of assets.

34.    On November 22, 2013 Judge Epstein of the Superior Court rejected Abell's argument that Abell could not comply with the Contempt Order because of his incarceration, finding that while the incarceration made it harder to comply Abell still could comply and that Abell had the assistance of his legal team for compliance purposes and that Ms. Bertola was available for assistance. D-480-1 at Tr. 48(17-24), 51(15-22), 54(5-10); S.A. 2(17-24), 4(15-22), 7(5-10).

35.     On January 9, 2014 Judge Nash of the Superior Court made similar findings, finding that Abell's incarceration was not a legal impediment to compliance.  D-480-2, at Tr. 345(22)-349(25); S.A. 9(22)-13(25).  Judge Nash also explicitly rejected the argument that Ms. Bertola was impeding Abell's access to the information and documents which Abell needed to produce. D-480-2, at Tr. 348(7-22); S.A. 12(7-22).

36.     On May 14, 2014 the Superior Court released Abell to a half-way house with the condition that, solely for the purpose of working on his discovery responses, between 6:00 a.m. and 6:00 p.m., Abell could travel to the office of his counsel, his own office, or the office of the attorney for the Chapter 11 Trustee in the Bankruptcy matter "for the sole purpose of working on the completion of discovery responses" in the Superior Court matter.  S.A. 14-15.

37.     In a July 16, 2014 letter to the United States Attorney for the District of Columbia, Judge Nash stated that he earlier that day "found Mr. Abell had not come into compliance" with the Orders of the Superior Court.  S.A. 18; s*ee also* S.A. 17(2-10).

38.     During an August 14, 2014 hearing, Judge Nash pressed Abell's counsel for any evidence that Abell's access to his documents was being impaired by Ms. Bertola.  Abell's counsel acknowledged that Ms. Bertola was not obstructing Abell's access to documents.  S.A. 24(1-6).  The Court then invited the

17

Debtor's counsel to bring to the Court's attention any instance when Ms. Bertola did block Abell's access to documents.  S.A. 24(22)-26(10).  To date, Abell's counsel has not brought any such evidence to the attention of the Superior Court or to the bankruptcy court.

39.    During the same hearing of August 14, 2014, Judge Nash found that Abell continued not to be in substantial compliance with the Superior Court discovery order.  S.A. 22(22)-23(1).

40.    On September 4, 2014 Judge Nash again found that Ms. Bertola was not blocking Abell's access to the documents he needed to produce.  S.A. 28(5-15).  In doing so, Judge Nash specifically found that Abell was trying to create his impossibility defense by deliberately putting the documents he earlier controlled into Ms. Bertola' s  hands.  S.A. 30(6)-31(17).  Judge Nash further found that Abell continued not to be in substantial compliance with the Superior Court discovery order.  S.A. 32(25)-34(3).

41.    Following a hearing on September 17, 2014, Judge Nash found that he "continue[s] to be persuaded that [Abell] is not in substantial compliance with the [court orders] and his continued residency at the halfway house is necessary to secure that compliance."  S.A. 37(9-12).

42.    On September 17, 2014 Judge Nash also expressly found that "Ms. Bertola is not erecting any barriers to Mr. Abell having access to [the information he is required to produce]."  S.A. 36(19-20).

## STANDARD OF REVIEW

The trial court has discretion to pursue a wide range of available sanctions for failure to obey a discovery order, and the trial court's choice of the appropriate sanction, including dismissal of claims, is reviewed under the abuse of discretion standard.  *Young Again Prods, Inc. v. Acord,* 459 Fed. Appx. 294, 301 (4th Cir. 2011), *cert denied*, __ U.S. __, 133 S. Ct. 140, 184 L. Ed. 2d 30 (2012)(affirming entry of default judgment); *Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians,* 155 F.3d 500, 504 (4th Cir. 1998).  The abuse of discretion standard applies to a bankruptcy court's orders imposing discovery sanctions.  *Jacksonville Airport, Inc. v. Michkeldel, Inc.,* 434 F.3d 729, 732 (4th Cir. 2006).

The bankruptcy court's findings of fact are reviewed for clear error.  *In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc*., 453 F.3d 225, 231 (4th Cir. 2006).

## SUMMARY OF ARGUMENT

The appeal is predicated upon unsupported contentions by Abell's counsel about the record below which are largely made-up and which bear no resemblance to the record under review.  Indeed, the Appellant Brief's "Statement of Facts"

goes on for pages without citation to any relevant record source. The Brief ignores the actual findings of the courts that have addressed the issues. Many other statements in Abell's Brief are simply untrue.

Abell had no constitutionally-protected right to be physically present at the discovery motion hearings. He was ably represented by his counsel at both hearings and there is no evidence that his physical presence was required at either hearing. He also waived these issues because he did not timely move to continue the February 12, 2014 sanctions hearing or move to make arrangements for his presence if he truly believed that his presence was necessary.

Abell has a long history of being sanctioned by courts for violations of discovery orders to deliberately obstruct the judicial process. The record fully supports the Bankruptcy's Court's assessment that Abell's incarceration in the District of Columbia for another violation of a court discovery order was not preventing him from producing the requested documents or answering the interrogatories relating to his so-called "retirement accounts." The record established that the documents and answers were readily available to Abell and they could have been provided through his counsel or otherwise.

Abell incorrectly postures this matter as if a broad "default judgment" had been entered against him. A default judgment is when a defendant is barred from

asserting any defenses as to *all* of the liability assertions of the plaintiff and the *entire* case proceeds to trial on the issue of damages only. The sanctions imposed in this case were not a default judgment or anything akin to a default judgment. Rather, the discovery sanctions are narrowly limited to two of the Debtor's many exemption claims Abell asserts but for which he failed to provide discovery. The sanctions leave untouched every other claim/defense that Abell has asserted or will assert in his bankruptcy case and the various related Adversary Proceedings against him.[3] Abell's effort to have this Court analyze the Sanctions Orders under the same heightened standards for the entry of an actual default judgment should be rejected. But even if that heightened standard is applied, the bankruptcy court did not abuse its discretion and the district court was correct in affirming that judgment.

Dismissal of those two exemption claims was within the bankruptcy court's discretion because the record showed that (a) Abell acted in bad faith, (b) Abell's disregard of the Court Order and the Trustee's discovery requests substantially

---

[3] Left untouched are the Debtor's various claims as to his overall discharge, the dischargeability of the judgments against him, his claims that various family-related "liens" asserted by him in his Bankruptcy Schedules are superior to the Wilson Judgment lien, and his claims that certain debts owed to his related business entities should be paid from his estate. Also untouched are Abell's claims that twelve of his limited liability companies are exempt because they are held as tenancies by the entirety. The "exemption" value of those tenancy by the entirety claims alone exceeds $2.3 million. D-26, p. 10.

prejudiced Wilson and the Trustee, (c) there was a strong need to deter Abell from continuing his historical practice of thumbing his nose at discovery orders, and (d) lesser sanctions would not have been effective because in the past Abell has not been incentivized to obey court orders when lesser sanctions were imposed upon him.

Finally, Abell was well-aware from his many prior sanctions experiences that his two exemption claims could be dismissed as a sanction if he violated the bankruptcy court's Order or failed to answer the Trustee's discovery.  And, as the district court found, Abell was also on notice of the possibility of such sanctions by the content of the sanction motions filed against him.  Thus, this serial violator of court orders knew the potential consequences of violating another court order.  He disobeyed the Court Order out of a self-interested desire to avoid disclosure of adverse information, not upon any lack of knowledge as to potential legal consequences of his actions.

## ARGUMENT

### I.  ABELL HAS WAIVED HIS ABUSE OF DISCRETION ARGUMENT BECAUSE HIS ARGUMENT IS BASED ON MADE-UP "FACTS" WHICH FIND NO SUPPORT IN THE RECORD

Most of the factual assertions that underlie Appellant's legal arguments are unfounded and find no support in the record below.  Indeed, the Appellant's Brief

states "facts" from pages 11-17 virtually without any references to any record. [4]

The "facts" are instead are his counsel's self-serving assertions. For example, there is the fanciful assertion that the requested discovery had already been provided to Wilson in the Superior Court matter. There is no citation for this assertion because it plainly is not true.[5] The <u>undisputed record evidence</u> is that the materials and information subject to the bankruptcy court Order had not been provided by Abell in the Superior Court case. J.A. 404(23)-409(2), 426(17)-429(2).

Similarly, Abell throughout claims that his so-called "estranged wife" blocked his ability to comply with the Court Order but there is no cited support for this assertion. This unsupported assertion flies in the face of the Superior Court findings. In fact, the Superior Court, on the record before it, has discounted that claim, finding that it appears to be a made-up excuse in an attempt to justify Abell's refusal to obey the discovery orders of that Court. D-480-2 at Tr. 348(7)-

---

[4] 4th Cir. L.R. 28(f) provides:

> [T]he Statement of the Case required by F.R.A.P. 28(a)(6) must include a narrative statement of all of the facts necessary for the Court to reach the conclusion which the brief desires, with references to the specific pages in the appendix that support each of the facts stated….

[5] In *Projects Mgmt. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) this Court refused to consider a similar unsupported claim on appeal that the sanctions were too harsh because the opposing parties *allegedly* received the requested documents. Abell presented no record evidence to support that assertion.

349(18); S.A. 12(7)-13(18); *see* ¶¶35, 38, and 42, *supra*, at pp. 17-19. Appellant also asserts, without reference to any evidence, that he has no control of the various documents that are stored at his Phoenix Real Estate in the building Abell himself owns. Brief, 17. The issue of his control over those documents was a subject matter of the litigation in the Superior Court and there, on the record, the Superior Court found otherwise. D-480-2, at Tr. 347(17)-348(12); S.A. 11(17)-12(12).

This Court has held that an appellant who fails to support its factual contentions "with citations to the authorities and parts of the record on which [it] relies" waives its argument. *Projects Mgmt. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013)(*citing* Fed. R. App. P. 28(a)(9)(A) ). *See also Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009); *11126 Baltimore Boulevard v. Prince George's County*, 58 F.3d 988, 993 fn. 7 (4th Cir. 1995). Here, Abell in a wholesale fashion has not supported the numerous factual contentions upon which he relies for his abuse of discretion argument, but instead writes his own "story" unfettered by the restrictions of actual support in the record below. As such, Abell has failed remotely to comply with his obligations under Fed. R. App. P. 28(a)(9)(A) and 4th Cir. L.R. 28(f) and Abell has waived his abuse of discretion arguments because his arguments must be based upon the record, not a work of fiction.

24

## II. THERE IS NO DUE PROCESS REQUIREMENT THAT THE PARTY BE PHYSICALLY PRESENT AT A MOTION HEARING

There were two hearings relating to the discovery requests: (1) the November 21, 2013 hearing on Wilson's Fed. R. Civ. P. 37(a) motion to compel, and (2) the February 12, 2014 hearing on Wilson's Fed. R. Civ. P. 37(b) motion for sanctions for violation of a discovery order and the Trustee's separate motion for sanctions under Fed. R. Civ. P. 37(a) for failure to provide the discovery requested by the Trustee. Abell's counsel was present at both hearings and no restrictions were placed upon Abell's counsel as to argument or introduction of evidence at either hearing.

Abell cites no authority for the proposition that an evidentiary hearing with the *party* present was required before Rule 37(a) or Rule 37(b) sanctions could be imposed, nor does case law support his argument. *See Lowe v. Veliz (In re: Texas Bumper Exchange)*, 333 B.R. 135, 139-40 (Bankr. W.D. Tex. 2005)(the text of the Rule and the Advisory Committee notes for Rule 37(a) show that a bankruptcy court may rule on a motion to compel without an evidentiary hearing). *See also White v. Wirtz*, 402 F.2d 145, 148 (10th Cir. 1968)(hearing not required under Rule 37(a)). *Cf. F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico*, 563 F.3d 1, 7 n.3 (1st Cir. 2009)(no due process violation where court sanctioned party without a hearing where sanctioned party had opportunity to present facts in

25

opposition and court provided opportunity for hearing, but sanctioned party failed to take advantage).

Even assuming *arguendo* that the bankruptcy court was constitutionally-obligated to hold a hearing on the various discovery motions, Abell was represented at each of those hearings by his counsel after his counsel fully briefed the issues and was given unrestricted opportunity to present whatever evidence and argument he chose at the hearings. The Brief does not identify what additional evidence or argument that Abell's counsel was unable to present because Abell was not physically present at either hearing.[6]

If Abell truly believed that his presence was necessary at either hearing he could have, *inter alia*:  (a) petitioned the bankruptcy court or district court to issue a habeas corpus order to the Superior Court to allow his presence at the hearings, (b) petitioned the Superior Court to temporarily release him to allow his presence at the hearings, or (c) asked that he be allowed to appear at the hearings by video conference or telephone. He chose none of these alternatives, leaving the

_____

[6]Wilson's motion to compel was filed nearly six weeks before Abell's incarceration, leaving ample time prior to incarceration for Abell to have assisted his counsel in preparing a written response or preparing for a hearing if Abell desired a hearing. Abell filed <u>no</u> written opposition to the motion and made no request for a hearing. At the hearing, the bankruptcy court allowed Abell's counsel to proffer as to what Abell would testify. J.A. 114(25)-115(1). Thus, Abell's counsel was able to get on the record the same evidence he could have presented if Abell had been present.

implication that he did not believe his physical presence at the hearings was necessary.  Having failed to make any effort to be present for testimony, Abell cannot now claim that his absence from the hearings was prejudicial or constituted a due process violation. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)("[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.").

## A. Abell Waived All Claims as to the November 21, 2013 Hearing

Abell claims that a Due Process violation occurred because he was unable to attend the November 21, 2013 hearing on Wilson's motion to compel.  Brief, 31. That motion and hearing led to the Discovery Order of December 13, 2013.  But Abell did not appeal the entry of the Order compelling him to produce the requested discovery; Abell only appealed the later Orders of February 18, 2014 and February 24, 2014 sanctioning him for violating the Discovery Order and not responding to the Trustee's discovery.  D-401.  Indeed, the Appellant's Brief acknowledges that Abell only appealed the Orders of February 18, 2014 and February 24, 2014.  Brief, 7.  Thus, any issues relating to the November 21, 2013 hearing have been waived.  *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 267 (4th Cir. 2006)("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances.").

27

B.  Abell Waived All Claims as to His Alleged Inability to Attend the
    February 12, 2014 Hearing

On January 23, 2014 the bankruptcy court, *sua sponte*, set the hearing date

of February 12, 2014 regarding Wilson's and the Trustee's motions for sanctions.

D-347.  Abell did not seek to delay that sanctions hearing until Abell could be

present, even though he could have sought such relief. [7]  Having not made that

request below, Abell cannot now claim that he was denied due process by the

bankruptcy court for proceeding with that hearing without his presence.  Also,

Abell never requested in the first place that the bankruptcy court hold a hearing on

the motions for sanctions with him being present.  Abell cannot now complain

about his absence from that hearing when (a) he never requested the hearing to

begin with, and (b) he never asked that the hearing be delayed until he could be

present.

III. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN
     SHAPING AN APPROPRIATE REMEDY FOR ABELL'S
     INTENTIONAL VIOLATION OF THE COURT'S DISCOVERY ORDER

The Court's sanctions orders were narrowly limited to only two of Abell's

exemption claims.  But even if the Court Orders of February 18, 2014 and

February 24, 2014 are to be evaluated as if they were actually a "default

judgment," the bankruptcy court did not abuse its discretion in the selection of that

---

[7] Md. Bankr. L.R. 5071-1(a) and (b) set forth the procedures for requesting a
continuance.

sanction, and the district court correctly concluded that the bankruptcy court did not abuse its discretion.  J.A. 454-56.

There are four factors that should be taken into consideration prior to the imposition of a "default judgment:"  (1) whether the noncompliant party acted in bad faith; (2) the amount of prejudice the party's noncompliance caused the opposing party, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.  *Mut. Fed. Sav. & Loan v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

The bankruptcy court made express findings on most, but not all of these factors.  However, the bankruptcy court was not required to make express findings on each factor.  *Young Again Products*, 459 Fed. Appx. at 302 (affirming order of default by district court for discovery violations).  Despite the absence of an express finding on the applicable factors, appellate courts "will uphold a default judgment when it is clear from the record that the district court did not abuse its discretion." *Id.* at 302.  Here, there is substantial record support as to all four factors, as the district court so concluded from its review of the record.  J.A. 453-56.

 (Factor 1) Bad faith was established in the record by Abell's history of flagrant violations of discovery orders.  *Mut. Fed. Sav. & Loan Ass'n* , 872 F.2d  at

29

94 (severer sanctions warranted under Rule 37(b) for repeat violators); *Young Again Products, Inc. v. Acord,* 459 Fed. Appx. at 302 ("pattern of noncompliance" is evidence of bad faith).  The bankruptcy court record establishes that Abell had been deliberately violating court orders in multiple jurisdictions to provide discovery since at least 2002.  J.A.171-72.

When considering sanctions, a court may consider all the circumstances surrounding the alleged violations, including a party's misconduct in other cases. *Atkins v. Fischer,* 232 F.R.D. 116, 129-31 (D.C. Cir. 2005)(relying upon party's sanctions in other cases in support of dismissal of claims (*citing Link v. Wabash R.R. Co.,* 370 U.S. 626, 635 (1962) , in which the Supreme Court held, in affirming the dismissal of a suit, that "the totality of circumstances can include events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy."); *Travelers Ins. Co. v. St. Jude Hosp.,* 38 F.3d 1414, 1417-18 (5th Cir. 1994)(affirming award of sanctions when district court considered collateral bankruptcy proceedings in its sanctions order); *Johnson v. Comm'r of Internal Revenue,* 289 F.3d 452, 456-57 (7th Cir. 2002)(holding that the tax court would be "remiss not to consider" the party's bad conduct in other cases); *Hissom v. New York City Dep't of Housing*, 1987 U.S. Dist. LEXIS 13372, Civ. No. 86-2340, 1987 WL 45807, at *7 (S.D.N.Y. Dec. 22, 1987)("in order to further the purpose of deterrence, the court should take into account whether the

persons subject to sanctions have abused the judicial system in the past"); *Felman Production, Inc. v. Industrial Risk Insurers*, 2011 U.S. Dist. LEXIS 112161, 2011 WL 4547012, at *9 (S.D.W.Va., Sept. 29, 2011)  (when the offending party's conduct reflects a "pattern of indifference and disrespect to the authority of the court," dismissal of that party's claim is appropriate).

Given Abell's long history of deliberate violations of court discovery orders, the record supported the finding that Abell's violations in this instance were willful and part of his *modus operandi*, as stated by the bankruptcy court in its Order denying Abell's request to stay the sanctions.  J.A. 443-444.  To that end, the district court's Memorandum Opinion affirmed the bankruptcy court's sanction "based on Abell's bad faith."  J.A. 453.  Abell proffers no argument as to why his serial violations should not be considered as evidence of his bad faith.[8]

(Factor 2) Wilson and the Trustee each separately presented evidence that they had been substantially prejudiced by Abell's violations because he affirmatively precluded them from receiving discovery responses relating to the

---

[8] Astonishingly, while Abell falsely cites his incarceration as an impediment to responding to Wilson's and the Trustee's discovery request (and complying with the Discovery Order), as discussed *infra*, at pp. 40-41.  Abell amended his Schedule C in December 2013 -- during his incarceration -- to, *inter alia*, increase the exemption value of the Roth IRA. J.A.  145, 154, 167.  Abell's jailhouse amendment included the submission of a signed declaration under penalty of perjury that the schedules are "true and correct to the best of my knowledge, information, and belief." *See id.*

most important portions of their respective cases in support of their objections to Abell's claimed exemptions of the MMC-EBT and the Roth IRA.  J.A. 173-76. [9]

Thus, it was not an abuse of discretion for the bankruptcy court to find that "Creditor Wilson was prejudiced by [Abell's violation of the Court's Discovery Order.]"  J.A. 440.  The district court also concluded that Wilson and the Trustee each were prejudiced by Abell's misconduct.  J.A. 453-56.[10]

---

[9] By stonewalling the Trustee's rightful discovery efforts, Abell obstructed the Trustee's ability to fulfill his statutory duties.  Abell's actions prejudiced the bankruptcy estate by forcing the Trustee to expend the estate's limited resources to obtain information necessary to evaluate Abell's claimed exemptions.  Through his misconduct, Abell compelled the Trustee to wait approximately three (3) months, file a motion for sanctions, and prepare for a hearing only to learn late in the night before the hearing that, for the first time, Abell claims his Roth IRA started with two contributions totaling $4,000 in 1998 and 1999, respectively, and somehow grew to a cash amount of $228,261.00, even after experiencing losses.  J.A. 380, 382.

[10] Abell erroneously contends that the Trustee was not prejudiced because the Trustee was satisfied with an extension of the discovery deadline.  As stated at the February 12 hearing, the Trustee asked for two forms of relief in light of the incomplete and evasive information Abell provided the night before the hearing.  J.A. 403(15-22).  First, the Trustee requested an extension of the discovery deadline in order for the Trustee to obtain supplemental discovery in light of Abell's responses.  *Id.* at 403(12)-04(5).  *Alternatively*, the Trustee argued:

> Trustee Counsel:     [W]e do stand on our present motion for sanctions and the relief requested therein, the basis being that we do not believe that the Federal Rules of Civil Procedure contemplate not answering interrogatories and then on the eve of a hearing on a motion for sanctions filing an answer and sort of saying no harm, no foul, here are our answers; there's no prejudice, don't worry about it. . .

32

(Factors 3 and 4)[11]  It is Abell's *modus operandi* to stall and drive up his

adversary's costs.  This Circuit has stated that "stalling and ignoring the direct

orders of the court with impunity" is misconduct that "must obviously be

deterred."  *Mut. Fed. Sav. & Loan*, 872 F.2d at 93.  *See also Nat'l Hockey League

v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)  ("The most severe sanction ...

must be available ... to deter those who might be tempted to such conduct in the

absence of such a deterrent.").  The record before the bankruptcy court established

that lesser sanctions have not been sufficient in the past to induce Abell to comply

with court orders.  On the record then before the bankruptcy court it was necessary

for the sanctions to be increased to induce Abell to comply with the future orders it

issued, because it was apparent that Abell was repeating his *modus operandi* of

thumbing his nose at court orders requiring him to provide discovery.

As to Abell's serial violations in this matter, the bankruptcy court properly

concluded that denial of the two particular exemption claims fit the need for

general deterrence as to other serial violators who later come before the courts in

---

| Court: | So you want an extension date.  Anything else? |
|---|---|
| Trustee Counsel: | If Your Honor is not willing to consider our motion for sanctions, we'll take the extension. |

*Id.* at 404(5-20).

[11]These factors are addressed together because "the deterrence and lesser sanctions factors are somewhat intertwined."  *Anderson*, 155 F.3d at 505.

33

this jurisdiction. *Melkersen v. Ray Constr. Co.*, 315 B.R. 45, 49 (Md. Bankr. 2004). *See also King v. Sears Roebuck & Co.*, 2013 U.S. Dist. LEXIS 24887 (S.D.W.Va. February 22, 2013)("It is important that others contemplating this type [of] tactic understand that it is an unacceptable practice to fail to [comply with discovery requests], and especially in response to a court order." (internal quotation omitted).

On the record before the bankruptcy court, it was apparent that lesser sanctions in the past, including its discovery Order in favor of Wilson at issue here, have not sufficiently induced Abell to comply. The bankruptcy court surely understood that "lesser sanctions" are ineffective as to this serial violator of court discovery orders.[12] The bankruptcy court knew that Abell's bankruptcy proceedings would be long and complex and that it was important for the court appropriately and severely to sanction Abell so that Abell would know that his

---

[12] Abell's Brief ignores that there were two distinct motions for sanctions before the bankruptcy court - - one by Wilson and a separate motion by the Trustee. Abell makes much of the fact that *counsel for the Trustee* may have agreed to lesser sanctions as to the failure to comply with the *Trustee's discovery requests* (J.A. 404(16-20)), but that is irrelevant as to Wilson's motion for sanctions for violation of the separate, prior Court Order that Abell was to comply with the Wilson discovery requests. Wilson never suggested that the "lesser sanctions" were appropriate for the violation of the Court Order as to Wilson. To the contrary, Wilson expressly argued that such "lesser sanctions" were not appropriate under the record before the bankruptcy court and her Motion documented the facts that underlie that argument. J.A. 168-74.

historical practice of disregard of court orders (including the Wilson Order at issue here) needed to be stopped early on in the bankruptcy proceedings. *See Mut. Fed. Sav. & Loan*, 872 F.2d at 94 (default appropriate sanction where earlier sanctions have not shown positive change in party's willingness to obey Court orders). Had the bankruptcy court imposed any less severe sanctions, Abell would have been encouraged continue his misconduct as the bankruptcy proceedings continued. The bankruptcy court's assessment as to what sanction was necessary for the continuing efficient administration of this complex bankruptcy case was within its discretion, and that discretion should not second-guessed on appeal. *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)("[t]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decision maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." ).

## IV. ABELL PROVIDED NO CREDIBLE EVIDENCE TO SUPPORT HIS CLAIM THAT HIS INCARCERATION PREVENTED HIM FROM COMPLYING WITH HIS DISCOVERY OBLIGATIONS AND IT WAS NOT "CLEAR ERROR" FOR THE BANKRUPTCY COURT TO REJECT THAT CONTENTION

Abell ignores that he (not appellees) had the burden to establish before the bankruptcy court that his incarceration made it impossible to (a) comply with the Court's Discovery Order of December 13, 2013, and (b) provide the requested discovery to the Trustee. Rather than support that contention with evidence before

35

the bankruptcy court, Abell instead relied on the conclusory statements of his counsel (as he does in this appeal). Given the state of the record, it was not clear error for the bankruptcy court to reject that unsupported contention. Indeed, the actual evidence before the bankruptcy court was that incarceration did not prevent Abell's compliance.[13]

A. Legal Framework

It is settled law that Abell bore the burden of proof that his incarceration made compliance with the Court Order impossible. *See, e.g.*, *United States v. Butler*, 211 F.3d 826, 831-32 (4th Cir. 2000); *Salvin v. American National Insurance Co.*, 281 Fed Appx. 222, 226 (June 10, 2008, 4th Cir.); *In re Kustler*, 914 F.2d 505, 524 (4th Cir. 1990)). *See also United States v. Rylander*, 460 U.S. 752, 757 (1983) (alleged contemnor bears the burden of proof that compliance with the order is "factually impossible" because he does not have access to records).

Conclusory statements do not meet the burden. *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). To meet the burden, the party must go beyond the bald assertions of inability to perform and introduce evidence in support of the

---

[13]This is hardly the first time an incarcerated litigant's claims were dismissed for failing to obey a court's civil discovery order. *See, e.g.*, *Davidson v. Dean,* 204 F.R.D. 251, 257-58 (S.D.N.Y. 2001); *Kenneth v. Nationwide Mutual Fire Ins. Co*., 2007 U.S. Dist. LEXIS 83973, 2007 WL 3533887, at *12 (W.D.N.Y. Nov. 13, 2007) ; *United States v. Nineteen Thousand Dollars in US Currency*, 2012 U.S. Dist. LEXIS 151807 (C.D. Ill. October 23, 2012).

claim that a "good faith all reasonable effort[]to comply" was made. *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984)(quoting *United States v. Ryan*, 402 U.S. 530, 534 (1971); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998).

A party claiming an inability to comply cannot rely on difficulties to performance that the party itself created. *In re Lawrence,* 279 F.3d 1294, 1300 (11th Cir. 2002); *Pesaplastic, C.A. v. Cincinnati Milacron Company,* 799 F.2d 1510, 1521-22 (11th Cir. 1986)(contemnor transferred financial records to third party after service of subpoena); *In re Power Recovery Systems, Inc.*, 950 F.2d 798, 803 (1st Cir. 1991). *See generally Chicago Truck Drivers v. Brotherhood Labor Leasing,* 207 F.3d 500, 506-07 (5th Cir. 2000)(outlining case law on "self-induced" inability to comply). The inability to perform defense fails when the "diligent efforts have been focused on how to avoid compliance with the Court's orders." *SEC v. Solow*, 682 F.Supp.2d 1312, 1333 (S.D. Fla. 2010).

B. <u>The Record Does  Not Support Abell's Contention that He Could Not Substantially Comply with the Discovery Order</u>

The bankruptcy court did not commit clear error when it found that Abell's incarceration did not prevent his compliance with his discovery obligations as to his exemption claims. Abell was not incarcerated until November 18, 2013. Wilson's discovery requests were served <u>on July 10, 2013</u> and Abell ignored these discovery requests - - per his *modus operandi* - - long before his incarceration.

Abell ignored those discovery requests when his response date of August 13, 2013 came and went. His tactic forced Wilson to file a motion to compel on October 8, 2013. J.A. 25. The hearing on that Motion was set for November 21, 2013. Up until November 18, 2013, incarceration was no impediment to Abell providing the discovery. *See Kenneth v. Nationwide Mutual Fire Ins. Co*., 2007 U.S. Dist. LEXIS 83973, 2007 WL 3533887, at *12 (W.D.N.Y. Nov. 13, 2007)(rejecting argument that incarceration prevented compliance with court discovery order when discovery request was served months before disobedient party was incarcerated).

During the November 21, 2013 hearing on the motion to compel, Abell's counsel did not contend that compliance with any future discovery order would be hindered by Abell's incarceration. Then, on December 13, 2013 the bankruptcy court granted the motion to compel and ordered Abell, *inter alia*, to produce the designated documents and to answer Interrogatory No. 5 within 28 days (January 10, 2014). J.A. 142. Following entry of this Order, Abell did not petition the bankruptcy court for an extension of time or otherwise contend that he would not be able to comply with the Court's Order by January 10, 2014 due to his incarceration.

The record shows that Abell did not comply with the Discovery Order because non-compliance is his *modus operandi*. Abell was not incarcerated during any of many earlier times he ignored court orders and was sanctioned therefor.

Moreover, Abell always "held the keys to the jail" and could have complied with
the Superior Court Contempt Order to secure his release in time to comply with the
bankruptcy court's order.  Rather, Abell deliberately and obstinately continued to
defy the Superior Court's Order regarding disclosure of his assets and finances to
secure his release.  Thus, even *if* his incarceration in the District of Columbia
impaired his ability to comply with his discovery obligations before the bankruptcy
court, that impairment was self-inflicted.

Further, Abell's unsupported assertions in his Brief ignore that his counsel
had a virtually-unqualified right to meet with him in jail and bring documents into
the jail for review.[14]  There is nothing in the record that contradicts this.  Thus,
even though Abell was incarcerated he had the ability, though counsel, to answer
Interrogatory No. 5 (Item No. 9 in the December 13, 2013 Discovery Order),
which obligated Abell to:

> Identify each loan made by the MMC-EBT since March 1, 2009.  Your
> response should include the date and amount of each loan, the identity of
> each note or instrument signed by the borrower, the terms of the loan, and
> the date(s) on which the loan was re-paid in whole or in part.

---

[14] D.C.  Department of Corrections Policy and Procedures for Access to Legal
Counsel, No. 4160. 3G (December 21, 2012)(Section 9b)(attorney to have 24 hour
access to clients); Section 9d (physical visits from noon to midnight seven days a
week); Section 30( inmate entitled to keep at least two banker boxes of discovery
material); Section 15 (attorney can bring in laptops and attachments with discovery
material)).  [Excerpts in Addendum.]  Available at:
http://doc.dc.gov/sites/default/files/dc/sites/doc/publication/attachments/DOC_PS_
4160_3G_AccesstoLegalCounsel12122011wsig.pdf

J.A. 65-66, 143.  Abell provided no evidence to the bankruptcy court that he could not answer this interrogatory because of his incarceration, and he has offered no explanation on this matter to this Court on appeal.

The record establishes that Abell had access to his MMC-EBT records through counsel and with these records Abell could have made an effort to answer this relatively straight-forward inquiry about MMC-EBT loans to him without significant burden.  Indeed, during his incarceration on December 19, 2013 Abell amended his Bankruptcy Schedules, *inter alia*, to self-servingly change the value of his claimed exemption for the MMC-EBT account from $175,000 to "unknown."  J.A. 154.  While still incarcerated, he later self-servingly changed the value of this exemption to only $7,028.[15]  D-469, p. 10.  Thus, the record shows that while incarcerated Abell was somehow able to take actions that benefitted himself, *e.g.*, modifying his bankruptcy schedules in his favor, but somehow unable to take actions that benefitted his creditors, *e.g.*, discovery responses relating to his exemption claims.   Abell *chose* not to provide negative information about his MMC-EBT loans in response to the Court Order because he knew that disclosure of the loans from his MMC-EBT would show that he was operating the

_____

[15] After Abell began to fear that the bankruptcy court might find his MMC-EBT funds were not exempt, he and Ms. Bertola were incentivized to self-servingly "re-calculate" Abell's share of the funds down to only $7,028, and correspondingly shift most of the MMC-EBT to Ms. Bertola's "share."

40

"retirement account" as his own piggy bank, thus undermining his exemption claim. *In re: Goldschein,* 244 B.R. 595, 601 (Bankr. D. Md. 2000)(when the owner of a closely-held entity removes funds from the company's retirement accounts and violates the Plan's terms by making impermissible loans to self, the retirement plan loses its character as a "qualified plan" under Maryland law).

And, as the D.C. Superior Court Judges have found, Abell had the ability to produce the requested documents by requesting them from Ms. Bertola, or others at his offices, or he could have had his bankruptcy counsel obtain the documents from Abell's offices and produce them. D-480-1, at Tr. 51(15-22); D-480-2, at Tr. 347(17)-328(12); S.A. 4(15-22), 11(17)-12(12). The District of Columbia Judges - - who are certainly knowledgeable as to what an incarcerated person can and cannot do - - have found that Abell's incarceration did not prevent him, through counsel or otherwise, from complying with even more substantial discovery orders of their court than the orders on appeal here. D-480-1, at Tr. 48(14-24), 51(9)-52(4), and 53(6)-54(10); S.A. 2(14-24), 4(9)-5(4), 6(6)-7(10)(finding of Judge Anthony C. Epstein that Abell's incarceration does not prevent Abell from producing records through counsel or otherwise); D-480-2, at Tr. 345(22) -349(5); S.A. 9(22)-13(5)(finding of Judge Stuart G. Nash that Abell has the means to substantially comply with the Court's production orders despite his incarceration).

41

Abell's Brief does not explain how it was "clear error" for the bankruptcy court to reach the same conclusion that the Superior Court Judges reached.

### C. Abell's Factual Assertions in His Brief about His Incarceration Are Mostly without Record Support

Abell's Brief is filled with numerous irrelevant, unsubstantiated, and erroneous assertions about the reasons for his continued incarceration in the District of Columbia and his failure to come into compliance with the Superior Court's order.  *See* discussion at pp. 22-24, *supra*.  Appellees do not believe that they must address all of Abell's extra-record assertions made in his Brief about the alleged injustice of his incarceration.  Suffice it to say that Abell's counsel in that matter (who is Abell's counsel in this matter) had made all those same arguments in the Superior Court on multiple occasions, and those arguments have been rejected as factually-unfounded by the two Superior Court Judges who have been addressing Abell's continuing refusal to obey the Superior Court discovery orders. Indeed, Abell's counsel acknowledged to the bankruptcy court during the February 12, 2014 hearing that he was making the same arguments to it that he had earlier unsuccessfully made to the two Superior Court Judges.  J.A. 409(10-14).  Yet, Abell expects this Court on appeal to accept his *version* of the Superior Court matter based on his counsel's undocumented, extra- record assertions of the events in that matter (as if they were relevant here).  Appellees respectfully submit that

42

Abell's continued incarceration shows that the positions advanced by Abell's counsel in his Brief have been rejected by the Superior Court Judges that have the actual record of that matter before them. This is confirmed by the *actual findings* by the Superior Court, of which this Court may take judicial notice. Motion for Leave to File Supplemental Appendix (4th Cir. No. 19-1), pp. 2-3; *see also* ¶¶33-42 at pp. 16-19, *supra*.

## V. THE CONSTITUTION DOES NOT GUARANTY A PARTY THAT WILLFULLY VIOLATES A COURT ORDER THE RIGHT TO A TRIAL ON THE MERITS

Abell was subject to forfeiture of the right to a trial on his exemption claims when he willfully violated the Court Order of December 13, 2013 relating to discovery about Abell's claims as to those two accounts and later failed to respond to the Trustee's discovery. Abell does not cite any authority for the proposition that it is constitutionally impermissible for a court to dismiss a claim as a Fed. R. Civ. P. 37(b) sanction. Indeed, the Supreme Court long ago held that a party that abuses the judicial process is subject to sanctions, including the loss of the right to present evidence in support of its claim or defense. *Roadway Express v. Piper*, 447 U.S. 752, 764 (1980); *Chambers v. Nasco, Inc*., 501 U.S. 32, 44-46 (1991). As outlined in *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 479, 517 (D. Md. 2010), this principle has been in place "for almost two centuries." *See*, *e.g.*, *Hammond Packing Co. v Arkansas*, 212 U.S. 322, 353-54 (1909)(default judgment

43

is not a due process violation where defendant violated order to produce relevant evidence). Dismissal of a claim is expressly authorized as a sanction under Fed. R. Civ. P. 37(b)(2)(A)(v). This rule was approved by the Supreme Court, and it must be presumed that the Supreme Court did not approve a rule that violated the Due Process Clause.

## VI. THE "WARNING" ARGUMENT IS WITHOUT LEGAL MERIT

Abell erroneously contends that the bankruptcy court abused its discretion by imposing sanctions without first warning him that there could be severe consequences to any failure by him to obey the Court's order. For this claim, Abell cites *Choice Hotels International, Inc. v. Goodwin & Boon*, 11 F.3d 469 (4th Cir. 1993), a case arising under Fed. R. Civ. P. 41 and involving whether a conditional dismissal order following a settlement should have stated that the dismissal would be with prejudice if no motion to re-open was filed within 30 days. That case is inapposite and Abell's argument ignores *Young Again Products* where this Court held that an express, formal prior warning of the possibility of sanctions is not necessary when the disobedient party was aware from other sources or circumstances that there could be terminating sanctions entered against it if it did not comply with the court's orders. 459 Fed. Appx. at 303-04. Abell also ignores *Link v. Wabash River Railroad*, 370 U.S. 626, 632 (1962) where the

Supreme Court held that the absence of a prior warning of the possibility of

dismissal does not render the sanction order void.

The district court correctly found that any necessary notice of the

severity of non-compliance was fully laid out to Abell in the motions filed by

Wilson and the Trustee and by the statements of their counsel on the record as

to the severity of the sanctions they were seeking.  J.A. 455. [16]  Abell's Brief

ignores this analysis and thus does not meaningfully explain why the district

court's conclusion on this issue should not be followed.[17]

---

[16] As the district court noted, Wilson's January 21, 2014 Motion for Sanctions
made specific references to the sanctions available under Fed. R. Civ. P. 37(b) for
a violation of a court order, including default and dismissal of claims.  J.A. 173-75,
450.  That motion also attached a proposed Order specifically requesting dismissal
of the Roth IRA and MMC-EBT exemption claims.  J.A. 179-80.  Even if he were
unaware of those potential consequences (by virtue of forgetting all the prior times
that terminating sanctions had been entered against him for his other discovery
order violations), by Wilson's January 21, 2014 motion Abell had re-learned those
potential consequences with time to avoid them through compliance.

[17] Abell makes much of the fact that the district court mis-referenced the *source* of
his claim that his failure to comply was due to his wife's refusal to cooperate.
Brief at 41.  It is true, as Abell points out, that he did not *testify* to that at the stay
hearing; however that was the factual *averment* in his motion for the stay (D-419,
pp. 5-6).  Abell then turns this non-substantive referencing error into a baseless
claim that this "makes the District Court's analysis suspect".  Brief, 41.  Further,
the inconsequential citation error was made by the district court and, even if it was
relevant, it provides no basis for any attack on the bankruptcy court's findings and
conclusions.

This Court has observed that the purpose of a "warning" of default/ dismissal is so that a party is "aware of the dramatic consequences" of failing to obey the order while the party still has time to satisfy the terms of the order. *Hathcock v. Navigator International Trans. Corp.*, 53 F.3d 26, 40 (4th Cir. 1995). But Abell was not a legal neophyte who might not have fully appreciated the consequences of disobeying a court's discovery order. Abell was represented by counsel here, he has been a party to countless lawsuits and he is a serial violator of court discovery orders for which he previously had defaults, dismissals, and other severe sanctions entered against him. Thus, Abell was already "aware" of the consequences he faced for violating a court's discovery order. *Id.* at 40. *See also Davidson v. Dean*, 204 F.R.D. 251, 257-58 (S.D.N.Y. 2001)(adopting recommended ruling which rejects the argument that experienced litigant represented by counsel must be expressly warned by the court that dismissal will ensue if the Court's discovery order is disobeyed).

Abell does not explain in his Brief why the bankruptcy court needed to tell him what he plainly already knew from his multiple past and current sanction experiences. The law commonly rejects Abell's position that he had to be warned of a fact that he already knew. *See, e.g., Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 351-52 (4th Cir. 1998)( in tort law, no "duty to warn" when user knows or should know of the danger); *Hillson Partners Ltd.*

46

*Partnership v. Adage, Inc*., 42 F.3d 204, 213-14 (4th Cir. 1994)(in commercial law, no "duty to disclose" facts already known to other party).

Nor does Abell explain how he was prejudiced by the bankruptcy court's alleged failure to warn him that he might be sanctioned.  Indeed, Abell went to jail for his violation of a discovery order issued by the Superior Court of the District of Columbia - - after a stern warning from that court that severe consequences would follow if he failed to obey that discovery order.  J.A. 205-16.  Ironically, the very same bankruptcy judge had earlier sanctioned Abell in a prior bankruptcy matter for violation of the court's discovery order by striking Abell's answers and establishing certain facts to the point that the sanction was the equivalent of default judgment.  J.A. 172, ¶10.j.  Thus, Abell already knew from personal experience that this very bankruptcy court could enter a sanction that would end his ability to press his two exemption claims if he failed to obey the court's Discovery Order.

Abell cites no instance where a trial court has been required to redundantly "warn" a serial violator of court orders that there might be severe consequences for yet another violation of a court order by that recidivist.  Moreover, it is wholly incredible for Abell to suggest to this Court that had he only known that his two exemption claims might be dismissed as a sanction, he would have faithfully complied with the Discovery Order and answer the

47

Trustee's discovery. It is plain that Abell's deliberate disregard of the bankruptcy court's Order and the Trustee's discovery were based upon a self-interested desire to avoid disclosure of adverse information, not upon any lack of knowledge as to potential legal consequences of his actions.

## CONCLUSION

For the reasons set forth above, this Court should conclude that the bankruptcy court's Orders of February 18, 2014 and February 24, 2014 should be affirmed in all respects.

Respectfully submitted,

/s/_____    /s/_____
Richard M. Goldberg                      Randell C. Ogg
Anastasia L. McCusker                    Law Offices of Randell C. Ogg
Shapiro, Sher, Guinot, & Sandler         1150 Connecticut Avenue NW, 9th Floor
36 S. Charles St., Ste. 2000             Washington, DC 20036
Baltimore, MD 21201                      Tel. (202) 862-4323
Tel. (410) 385-4241                      Fax (202) 828-4130
Fax (410) 539-7611                       rogg@bode.com
rmg@shapirosher.com                      *Counsel for Appellee*
alm@shapirosher.com                      *Maria-Theresa Wilson*
*Counsel for Appellee*
*Roger Schlossberg, Trustee*

48

## APPELLEES' STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 4th Cir. L.R. 34(a), Appellees suggest that oral argument is not necessary because the issues on appeal are straightforward and can be readily resolved on the parties' briefs. If, however, the Court decides to hold oral argument on this appeal, counsel for the Appellees request an opportunity to present argument to the Court.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 13,162 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14 point Times New Roman typeface.

Dated:  November 6, 2014

*/s/*_____
       Randell C. Ogg

49

# ADDENDUM

# (LOCAL RULES AND REGULATIONS)

## A. Maryland Bankruptcy Local Rules

Maryland Bankruptcy Local Rule 5071-1:

Motions for Postponements

> (a) <u>Court Order Required</u>.  A court order is required for the postponement of a hearing, pretrial conference, or trial.

> (b) <u>Notice to Client and Other Parties</u>.  A motion to postpone any matter before the court must certify that the client has prior notice of the filing of that motion.  Notice of such motion, together with the reasons therefor, must be given by the fastest means to avoid inconvenience to other parties entitled to notice or their counsel before filing unless such notice is waived.

Maryland Bankruptcy Local Rule 9013-1(b)(2):

Motions Practice

> (b) <u>Procedure for Motions Other Than Motions for Relief from Stay and Motions to Avoid Lien</u>
>
> …
>
> Parties may file with or append to their motion and memorandum, or to their responsive pleading and opposing memorandum, supporting affidavits or documents establishing the elements of entitlement to the relief sought or any defense.

## B. District of Columbia Dept. of Corrections Policy and Procedures for Access to Legal Counsel, No. 4160.3G (December 21, 2012)

9.    GENERAL REQUIREMENTS

…

.b    *Visiting Hours*.  Attorneys and their agents (i.e., investigators, law clerks, law students, and interpreters)  shall have twenty-four (24) hour access to their client seven (7) days a week.

…

d.    Visiting Areas

1) *12:00 noon to 8:00 p.m.*  Legal visits shall be conducted in the Visiting Hall on the same floor as the inmate's assigned housing unit, except as stated below:

a) In the event that all legal booths are occupied on the respective floor, the Visiting Hall Officer shall contact Visiting Hall Officers on other floors to arrange for a booth and inform the attorney or agent of the change.  The Administrative Module Officer shall inform the inmate of the change and record the change on the inmate's pass accordingly.

b) Attorneys and their agents shall be moved to other floors as needed if booths on a particular level are unavailable.  If an attorney or agent requests to use the visiting phone instead of waiting for a booth, this request shall be granted and documented in the Visiting Hall logbook.

2) *8:00 p.m. and 11:30 p.m.*  All legal visits shall be conducted in Visiting Hall Two on the second floor.

3) *11:30 p.m. and 8:00 a.m.*  All legal visits shall be conducted in front of the Command Center.

4) *8:00 a.m. and 12:00 noon.*  All legal visits shall be conducted in Visiting Hall Two on the second floor.

5) *Saturday and Sunday.*  All legal visits shall be conducted in Visiting Hall Two on the second floor.

6) Overflow Visiting Hall. An alternate Visiting Hall shall be designated for overflow legal visits.

15.    AUTHORIZED ITEMS.  Attorneys may bring in with them:

…

e. Legal books, legal papers such as case law, correspondence and pleadings, and

f. Electronic Equipment. Without prior approval from the Warden or designee, only attorneys are authorized to enter a DOC facility with laptop computers, kindles, ipads, calculators, cds/dvds, videotapes, pagers and any

legal documentary materials to include, but not be limited to, photographs and diagrams.

30.  DISCOVERY REVIEW

The Department of Corrections cannot accept printed discovery on discs or laptops. Documentary discovery shall be provided in hard copy format. Where the discovery is voluminous and will not fit in "legal mail" envelopes, counsel can deliver up to two (2) boxes of printed material at a time to the Office of the General Counsel where DOC will pick it up and deliver it to the inmate. When counsel for the inmate indicates that review of the documents is complete, the DOC may, through the Office of the General Counsel, exchange the two boxes for two more for that inmate.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 6th day of November, 2014, I caused this Brief for

Appellees to be filed electronically with the Clerk of the Court using the CM/ECF

system, which will send notice of such filing to the following registered users:

Philip J. McNutt
Hughes & Bentzen, PLLC
1100 Connecticut Ave. NW, Ste. 340
Washington, D.C. 20036
*Counsel for Appellant*

Richard M. Goldberg
Shapiro Sher Guinot & Sandler
36 S. Charles St., Fl. 20
Baltimore, MD 21201
*Counsel for Appellee Roger Schlossberg, Trustee*

I further certify that on this 6th day of November, 2014 I sent the required

eight (8) bound copies of the Brief for Appellees to the Clerk of the Court via

Federal Express.

/s/_____
Randell C. Ogg